**Denise HITE, Plaintiff,**

v.

**VERMEER MANUFACTURING CO. and Rick Leedom, Defendants.**

**No. 4:03 CV 90174.**

United States District Court,
S.D. Iowa,
Central Division.

March 23, 2005.

Paige Ellen Fiedler, Beth A Townsend, Fiedler Townsend & Newkirk PLC, Johnston, IA, for Denise R Hite, Plaintiff.

Dale A Knoshaug, Hanson Bjork & Russell, Dale A Knoshaug, Hanson Bjork & Russell, Des Moines, IA, for Rick Leedom, Vermeer Manufacturing Company, Defendants.

## ORDER ON MOTIONS

PRATT, District Judge.

Before the Court is a motion, filed by Defendants, entitled "Defendants' Motion for Judgment as a Matter of Law, Motion for New Trial and Motion to Amend Judgment" (Clerk's No. 41). Also before the Court are two motions filed by Plaintiff: Plaintiff's "Motion for Equitable Relief, Front Pay, Interest, and Liquidated Damages" (Clerk's No. 40); and Plaintiff's

"Motion for Attorney's Fees and Expenses" (Clerk's No. 43). Additionally, Plaintiff has filed a Bill of Costs to which Defendants object in part. Each party resists the other's motion(s) and Plaintiff has filed replies to Defendants' resistances. The matters are fully submitted.

## I. BACKGROUND

On March 28, 2003, Plaintiff Denise Hite ("Plaintiff") filed a Complaint against Defendants Vermeer Manufacturing Co. ("Vermeer") and Rick Leedom ("Leedom"), alleging violations of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Iowa Civil Rights Act. No pre-trial dispositive motions were filed, and trial commenced in the matter on February 14, 2005. Prior to trial, the parties agreed that Plaintiff was not pursuing an independent claim under the Iowa Civil Rights Act. During trial, the Court granted judgment as a matter of law in favor of Defendants on Plaintiff's ADA claim. Thus, the only claim submitted to the jury was Plaintiff's FMLA retaliation claim. On February 17, 2005, the jury returned a verdict in favor of Plaintiff, finding: 1) Defendants failed to prove by the greater weight of the evidence that the same adverse employment action against Plaintiff would have been taken even had it not considered Plaintiff's FMLA leave use; 2) Plaintiff's damages in wages, salary, and employment benefits totaled $107,571.97; and 3) Defendants did not act with a good faith belief that it was in compliance with the FMLA when it discharged Plaintiff from her employment.

## II. LAW AND ANALYSIS

A. *Defendants' Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion to Amend Judgment*

Federal Rule of Civil Procedure 59 provides:

A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59. The power to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). While a trial court unquestionably has the discretionary power to grant a new trial, the role and function of the jury is not to be trivialized. "The district court can only disturb a jury verdict to prevent a miscarriage of justice." *Beckman v. Mayo Found.*, 804 F.2d 435, 439 (8th Cir.1986) (citing *McGee v. South Pemiscot Sch. Dist. R–V*, 712 F.2d 339, 344 (8th Cir.1983)).

Since this country's inception, an individual's right to trial by jury, in both civil and criminal matters has been held to be of the utmost importance. Indeed, the Seventh Amendment specifically provides that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States," except according to the rules of the common law. U.S. CONST. amend. VII. The jury is the traditional finder of facts in a trial, and as such, the " 'judge may not usurp the functions of the jury ... [which] weighs the evidence and credibility of witnesses.' " *White v. Pence*, 961 F.2d 776, 780–81 (8th Cir.1992) (quoting *McGee*, 712 F.2d at 344). The distinct roles between the court and the jury must be recognized and followed. For example:

Whether the evidence, when offered, is admissible, is a question for the court; but when admitted, the question whether sufficient or not is for the jury, and it

is their province to draw from it all such inferences and conclusions as it conduces to prove, and which, in their judgment, it does prove, and their finding is conclusive, unless a new trial is awarded by the court in which the case is tried, or in the appellate tribunal, for some error of law.

*Barreda v. Silsbee,* 62 U.S. 146, 167, 21 How. 146, 16 L.Ed. 86 (1858). The respect for the jury system is such that the court "will not disturb a jury's verdict unless [it] determine[s] that no reasonable juror could have found for the non-moving party based on the trial record." *Sanders v. May Dep't Stores Co.,* 315 F.3d 940, 943 (8th Cir.2003) (citing *Morning v. Arkansas Dep't of Corr.,* 243 F.3d 452, 455 (8th Cir. 2001)).

■ It follows, then, that a motion for new trial cannot be granted simply because the trial judge disagrees with the jury's reasoning. "Where reasonable men can differ in evaluation of credible evidence, a new trial on the ground of weight of the evidence should not be granted." *White,* 961 F.2d at 781. At the onset, "[i]t must be assumed that the facts of the case have been correctly found by the jury." *Barreda,* 62 U.S. at 166, 21 How. 146.

It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.

*Lavender v. Kurn,* 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916 (1946). A jury's verdict is less likely to be unreasonable where the evidence presented at trial is not complicated and the legal principles involved are not likely to confuse a jury. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 187 (8th Cir. 1972) (citing *O'Neil v. W.R. Grace & Co.,* 410 F.2d 908, 913 (5th Cir.1969); *Lewin v. Metropolitan Life Ins. Co.,* 394 F.2d 608, 614–15 (3rd Cir.1968); *Cities Service Oil Co. v. Launey,* 403 F.2d 537 (1968)); *see also Latino v. Kaizer,* 58 F.3d 310, 314 (7th Cir.1995) (ruling that jury verdicts in cases with highly disputed facts and simple issues are given greater deference). However, "[r]egardless of the rhetoric used the true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred." *Fireman's Fund,* 466 F.2d at 187. A miscarriage of justice only occurs when, based on the admitted evidence, the jury returns a verdict that is clearly not supported by the evidence.

■ Here, Defendants' motion argues that the jury's verdict in favor of the Plaintiff was a miscarriage of justice. Specifically, Defendants argue that the Court should grant judgment as a matter of law or a new trial, because the jury verdict was not adequately supported by evidence at trial. Plaintiff, on the other hand, argues that there was ample evidence to support the jury verdict. The Court must agree with Plaintiff. The record shows that Plaintiff offered testimony at trial indicating that she worked for Vermeer, that she was entitled to leave under the FMLA due to her severe depression, and that she frequently exercised her right to use FMLA leave. Plaintiff and her doctor testified about her depression, and about how stress aggravates her depression, and sometimes causes it to recur or intensify.

While working as a CNC lathe operator at Vermeer, Plaintiff began experiencing significant depressive episodes in 1999. Plaintiff used a combination of personal days, vacation days, and FMLA leave to cover her depression-related absences. Toward the end of 2000, Plaintiff began using intermittent FMLA leave, generally to cover days when she needed to come in late or leave early because of her depression. To evidence retaliation for using her protected FMLA leave, Plaintiff testified that she experienced problems with her supervisor, Leedom, every time she was absent from work. Specifically, she testified that Leedom "called into question as to whether or not [she] was really sick under the FMLA guidelines." Trial Tr. at 180.[1]

Plaintiff also testified that Leedom "would say that I needed to be at work because physically there looks nothing wrong with me ... I looked fine to him so I should be at work." *Id.* Plaintiff testified that she was "repeatedly called into [Leedom's office] to discuss [her] FMLA use and [her] depression." *Id.* Further, trial testimony revealed that Plaintiff was transferred to different machines several times because of her FMLA absences. Although she was paid the same wage, Plaintiff perceived the transfers as demotions. Being moved to the alternative machines, Plaintiff claims, exacerbated her depression, causing her to take more leave. After each move, Plaintiff complained to management at Vermeer that she believed her rights under the FMLA were being violated. Only then did Vermeer return Plaintiff to her CNC lathe. Plaintiff also testified that Leedom told her "If I continued to use FMLA, my job at Vermeer, I wouldn't-it would be in jeopardy." *Id.*

In support of Plaintiff's testimony, several written evaluations were entered into evidence that referenced Plaintiff's attendance problems. There was also testimony at trial that Vermeer had contacted Plaintiff's doctor without permission to verify certain portions of her FMLA certification sheets. In May 2001, Plaintiff voluntarily agreed to move to a different machine at Vermeer, on the condition that she not be further harassed for using FMLA leave. Despite this agreement, Plaintiff testified that Leedom continued to harass her, by writing her up for absences and by verbally telling her she was absent from work too frequently. Ultimately, in August of 2001, Plaintiff's employment was terminated when she, with permission, left her machine to phone her boyfriend to ask him to bring her medication to Vermeer. Testimony from several witnesses indicated that Vermeer did not have a cell phone usage policy and that other employees were not disciplined for using their cell phones during working hours.

While Vermeer and Leedom presented evidence that Plaintiff was terminated, not in retaliation for using FMLA leave, but for using a cell phone during work hours and for frequent absences not covered by FMLA, vacation, or personal leave, the Court cannot say it was unreasonable for the jury to discount that version of events and adopt the facts as set forth by Plaintiff. Essentially, the trial came down to two competing versions of events: First, Plaintiff's version offered that she used FMLA leave, returned to work, was harassed for her FMLA leave usage, which exacerbated her condition and caused her to use more FMLA leave, for which she was eventually fired. Vermeer, on the other hand, admits that Plaintiff had many protected absences, but asserts that she was never harassed for using FMLA usage and that her termination was due only to violating company policies and due to her unprotected, unexcused absences. The parties, then, basically agree on the facts,

1. Transcript references refer to the Court's unedited RealTime transcript.

just not on what inferences can be drawn therefrom or on the underlying motivations.

It seems clear that the determination of whether Vermeer's and Leedom's true motivations in terminating Plaintiff's employment amounted to a credibility determination. Such a matter is within the sound province of the jury to determine and, based on the evidence presented at trial, the Court cannot say it was unreasonable for the jury to find Plaintiff's evidence more credible. Likewise, the evidence was adequate to support the inference that Vermeer's stated reasons for terminating Plaintiff's employment were merely pretext for its unlawful retaliation against Plaintiff for using FMLA leave. As such, there was no miscarriage of justice and no judgment as a matter of law or new trial is warranted. Defendant's Motion is denied.

Defendants next contend that the Court should amend the judgment in this matter pursuant to Rule 59(e). Defendants argue that the Court should reduce the jury's damage award by twelve weeks pay, or $7,732.80, for each of the years 2002, 2003, and 2004, for a total reduction in damages of $23,198.40. According to Defendants, the evidence showed that Plaintiff only worked 40 out of 52 weeks in each of 2000 and 2001 because, during each of those years, she used her full twelve weeks of allotted FMLA leave, which is admittedly unpaid leave. The jury verdict, however, awarded Plaintiff damages for lost earnings for 52 weeks in each of 2002, 2003, and 2004. Defendants argue, "there is no doubt that if Plaintiff would have continued her employment with Vermeer Manufacturing Company, she would have continued to utilize her unpaid FMLA leave . . . [her] back pay award should be amended to 40 weeks per year". Plaintiff counters that Defendants made this argument to the jury and the jury appropriately rejected the argument.

■ Rule 59(e) provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." Fed.R.Civ.P. 59(e). Rule 59(e) motions are appropriate where they involve reconsideration of matters properly encompassed in the decision on the merits. *See White v. New Hampshire Dep't of Employ. Sec.*, 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Generally, altering or amending the judgment is appropriate where there is an intervening change in the law, where there is a need to reflect new evidence not available at the time of trial, to correct a clear legal error, or to prevent manifest injustice. *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir.1998). Presumably, on the present facts, Defendants request that the judgment be altered or amended to prevent a manifest injustice, that is, that the jury unfairly awarded Plaintiff damages without considering the FMLA time she would have taken, unpaid, due to her medical condition.

■ The Court must, however, agree with Plaintiff and find that it was not unreasonable for the jury to conclude that, but for Defendants' harassment of Plaintiff for her protected leave, her condition may not have been exacerbated such that she would have needed to take FMLA leave over and above her paid vacation and personal leave time. Such a conclusion is reasonable when viewing the record as a whole and the jury was well within its discretion to conclude as such. Accordingly, Defendants' Motion for amended judgment is DENIED.

### B. *Plaintiff's Motion for Equitable Relief, Front pay, Interest, and Liquidated Damages*

Plaintiff moves for equitable relief, front pay, interest, and liquidated damages.

Specifically, for equitable relief, Plaintiff requests that Vermeer be ordered to institute several changes to its FMLA policies. Further, Plaintiff requests the Court award front pay in the amount of $90,905.06, award prejudgment interest at the prime rate of 5.5%, compounded monthly, and award liquidated damages in a sum equal to the total awards for lost wages and interest. Defendants resist Plaintiff's motion,[2] asserting that Vermeer already has a comprehensive FMLA policy, already trains its managers and supervisors in FMLA, and has a specific FMLA coordinator to ensure that policies are up-to-date and compliant with the law. Defendants also argue that front pay is not recoverable under the FMLA, that prejudgment interest should not be compounded and should be at the same rate as post judgment interest, and that liquidated damages should not be awarded because Vermeer was acting in good faith and reasonably believed it was not violating the FMLA.

### 1. *Vermeer's FMLA policies.*

Plaintiff requests that Vermeer be ordered to put in place following policies:

1) to adopt an FMLA retaliation policy;
2) to inform employees who complain of retaliation that they have the right to file a Department of Labor Complaint and/or a lawsuit;
3) to comply with their FMLA retaliation policy;
4) to inform employees that they have no obligation to agree to allow Vermeer to contact their health care providers;
5) to provide all managers and supervisors with FMLA training.

As noted, Vermeer asserts that Plaintiff's requests should be denied because it already has a comprehensive FMLA policy,

already provides training to managers and supervisors, and has an employee designated as an FMLA coordinator to ensure Vermeer's FMLA policies are in compliance with the law.

■ The Court acknowledges that it has authority to enter an order requiring Vermeer to comply with FMLA legislation and with its own policies. The duty to comply with the law, however, is already upon Vermeer. As a large company, Vermeer would be well advised to institute the policies advocated by Plaintiff. Nonetheless, the Court does not believe that ordering Vermeer to take these steps will substantially advance its compliance with the law. Indeed, the present litigation should properly serve to deter future violations of the FMLA. Accordingly, the Court declines to impose the conditions requested by Plaintiff on Defendants, however, strongly advises Vermeer to evaluate and update its policies.

### 2. *Front Pay*

Title 29, United States Code, section 2617 provides:

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12

---

**2.** The Court notes that Defendants did not file a brief with its own motion or with its resistance to Plaintiff's motion, citing applicable law, as required by the Local Rules.

weeks of wages or salary for the employee;

(ii) the interest on the amount described in clause (I) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (I) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617. The Eighth Circuit has found that front pay qualifies as an equitable remedy under the statute "when it is impractical to order the employee's reinstatement to his or her previous job." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 n. 2 (8th Cir.2005) (citing *Williams v. Pharmacia*, 137 F.3d 944, 952 (7th Cir.1998); *Kelley v. Airborne Freight*, 140 F.3d 335, 354 (1st Cir.1998)); *see also Arban v. West Pub. Corp.*, 345 F.3d 390, 405 (6th Cir.2003) ("[W]e find that the FMLA provides for front pay."); *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 964 (10th Cir.2002) (awarding front pay as an equitable remedy in an FMLA case, and noting that "[f]ront pay is an equitable remedy and its

calculation and award are the responsibility of the court."); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 503–504 (4th Cir.2001) (stating that FMLA provides for equitable relief and "[s]uch equitable relief may include front pay"); *Churchill v. Star Enters.*, 183 F.3d 184, 193 (3d Cir.1999) ("Title VII, like FMLA, provides for back pay and front pay or reinstatement."). Plaintiff requests front pay in the amount of $90,905.06, as detailed in Exhibit 69,[3] for earnings for 2005 and for five years thereafter. Defendant merely asserts in resistance that front pay is not recoverable, a notion this court has already rejected, and that even if front pay is recoverable, it has been over three and one-half years since Plaintiff·worked for Vermeer and no front pay award should be permitted.

■ "Front pay is a disfavored remedy that may be awarded in lieu of reinstatement, but not in addition to it, where the circumstances make reinstatement impractical." *Sellers v. Mineta*, 358 F.3d 1058, 1063–64 (8th Cir.2004) (citing *Salitros v. Chrysler Corp.*, 306 F.3d 562, 572 (8th Cir.2002) (stating that front pay is a disfavored remedy); *Kucia v. S.E. Ark. Cmty. Action Corp.*, 284 F.3d 944, 949 (8th Cir. 2002) (stating that reinstatement should be the norm and that front pay is an exceptional remedy); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1466 (8th Cir.1994) ("Front pay is an equitable remedy, which ... may be awarded in lieu of, but not in addition[ ] to reinstatement.")). The Eighth Circuit has expressly held "that front pay, including the determination of how much front pay to award, is an equitable issue for the court." *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 643 (8th Cir.1997). Front pay has been described as "not so

---

**3.** Plaintiff requests Lost Wages of $33,508.80, Health Insurance of $2121.24, Dental Insurance of $162.72, less $20,280.00 in wages earned, for a total of $15,512.76 for each of the years 2006, 2007, 2008, 2009, and 2010.

Plaintiff's requested damages for 2005 are based on the same calculations, but is prorated from the date of judgment, for a total of $13,341.26 requested for 2005.

much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." *Kramer v. Logan County Sch. Dist. No. R–1,* 157 F.3d 620, 626 (8th Cir.1998).

In the present case, Plaintiff has not requested reinstatement. Indeed, the Court finds that reinstatement of Plaintiff to her former position at Vermeer would be impracticable. To expect Plaintiff to return to work for an employer who violated her federal rights, and according to Plaintiff, caused her serious medical condition to be substantially exacerbated, would not be reasonable. Indeed, the clear animosity between Vermeer, Leedom, and Plaintiff, makes it unreasonable to expect Plaintiff to return to her employ at Vermeer. Accordingly, the Court finds that an award of front pay as an equitable remedy is appropriate under the circumstances.

While the Eighth Circuit has not provided factors to be considered when determining how much front pay should be awarded, the Sixth Circuit Court of Appeals has stated that courts should consider: "an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." *Arban v. West Pub. Corp.,* 345 F.3d at 406. The burden is upon the Plaintiff to show sufficient evidence necessary to calculate a reasonably certain front pay award. *See e.g., Excel Corp. v. Bosley,* 165 F.3d 635 (8th Cir.1999); *Barbour v. Merrill,* 48 F.3d 1270, 1279 (D.C.Cir.1995). "An award of front pay also is inherently speculative in length of time and when considering possible mitigation by reason of other employment. It is based on probabilities rather than actualities." *Mathieu v. Gopher News Co.,* 273 F.3d 769, 782 (8th Cir.2001).

The discernable facts of the present case show that Plaintiff worked for Vermeer from December 15, 1997, to August 28, 2001, a period of just under four years. Prior to working at Vermeer, Plaintiff held various jobs, including Pizza Hut manager, for approximately two years, radio station account executive, and regional health center employee. She attended college for two years studying nursing, but did not complete her degree. Since March 2004, Plaintiff has been employed by Accessible Medical Staffing on a part-time basis. Plaintiff asserted at trial that she would have worked for Vermeer "forever" given the choice, and claims in her brief in support of her motion that she "will earn considerably less over the course of her working life than she would have had her career not been disrupted by severe harassment, retaliation, and ultimately termination for using FMLA leave." [4] Plaintiff's position confuses the distinction between front pay and lost earning capacity, discussed in detail in *Williams v. Pharmacia,* 137 F.3d 944, 952 (7th Cir.1998), in the context of a Title VII case:

> [F]ront pay is the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit (or as close an approximation as possible) as the plaintiff would have received had she been reinstated.... An award of lost future earnings

---

4. The Court notes that neither party has requested a hearing on front pay, nor has either party presented additional evidence, affidavits, or appendices in support of their submissions on the issue. Accordingly, the Court will make its front pay determination on the record as it now exists.

is a common-law tort remedy. "To recover for lost earning capacity, a plaintiff must produce 'competent evidence suggesting that [her] injuries have narrowed the range of economic opportunities available to [her] ... [A] plaintiff must show that his injury has caused a diminution in his ability to earn a living.'" *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir.1992) (McKnight III) (quoting *Gorniak v. National R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir.1989)) (alteration in original). Williams's expert witness testified that the poor evaluations Williams received and Pharmacia's eventual termination of her employment taint Williams's employment record. The jury was entitled to rely on this testimony in finding that Pharmacia's acts of discrimination diminish Williams's future earning capacity in the same way that a physical injury may diminish the earning capacity of a manual laborer.... When reputational injury caused by an employer's unlawful discrimination diminishes a plaintiff's future earnings capacity, she cannot be made whole without compensation for the lost future earnings she would have received absent the employer's unlawful activity. Lost future earning capacity is a nonpecuniary injury for which plaintiffs may be compensated under Title VII.

*Id.* at 952–53 (some citations omitted). Going on to discuss why the district court did not err in awarding *Williams* both front pay and lost future earnings, the *Williams* Court went on to state:

Front pay gives the employee the earnings she would have received had she been reinstated to her old job.... In determining earnings from the employee's new or expected job for the purposes of calculating front pay, the court terminates the inquiry at the point at which the plaintiff finds employment comparable or superior to her old job.

Once the plaintiff finds such employment, the damages from her unlawful termination-at least, the damages that reinstatement/front pay are designed to remedy-are mitigated down to zero. This is the reason why front pay awards are limited in duration. *See, e.g., McKnight III*, 973 F.2d at 1372 (stating that "to provide the district court with the essential data necessary to calculate a reasonably certain front pay award," the plaintiff must show "the length of time the plaintiff expects to work for the defendant"); *Ward v. Tipton County Sheriff Dep't*, 937 F.Supp. 791, 796 (S.D.Ind.1996) ("Front pay is awarded for a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment.").

Limiting the duration of front pay awards also helps to replicate the effects of reinstatement. Reinstated employees are not necessarily expected to stay in their positions indefinitely. Just as a reinstated employee may be expected to leave his or her position for comparable or better employment, an employee receiving front pay in lieu of reinstatement is entitled to front pay only until such time that the employee can reasonably be expected to have moved on to similar or superior employment.

Damages for lost future earnings, in contrast, are not limited in duration in the same way. The reputational or other injury that causes the diminution in expected earnings can stay with the employee indefinitely. Thus, the calculation of front pay differs significantly from the calculation of lost future earnings. Whereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earn-

ings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects.

As a final note, although there is no overlap in this case, we caution lower courts to take care to separate the equitable remedy of front pay from the compensatory remedy of lost future earnings. On occasion, courts have awarded damages under the rubric of front pay that may be better described as lost future earnings. *See McKnight II,* 908 F.2d at 117 (noting front pay awards that are "realistically damages for lost future earnings"). Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings. District courts should be vigilant to ensure that their damage inquiries are appropriately cabined to protect against confusion and potential overcompensation of plaintiffs. *Id.* at 953–54 (some citations omitted).

■ The Court finds the reasoning in *Williams* extremely persuasive, and adopts its distinction between front pay and loss of future earnings. In the present case, Plaintiff has not provided "competent evidence suggesting that [her] injuries have narrowed the range of economic opportunities available to [her]," nor has she shown that Vermeers' retaliation for FMLA usage has "caused a diminution in [her] ability to earn a living." *Id.* at 952. Unlike in *Williams,* Plaintiff has offered nothing to support the assertion that her unlawful discharge taints her employment record. Moreover, as noted by the *Williams* Court, loss of future earnings constitutes a compensatory remedy and not an equitable remedy, and therefore cannot be recovered pursuant to the plain language of 29 U.S.C. § 2617.

■ Turning then to what, if any, amount of front pay should be awarded to Plaintiff on the facts now in the record, the Court accepts that Plaintiff is presently working in a position that pays less than she was making at Vermeer, and that does not have the health and dental benefits Plaintiff received while working for Vermeer. Nonetheless, once Plaintiff has shown that her present employment is not substantially equal to the prior employment from which she was unlawfully discharged, the burden shifts to the Defendants to show that she has not exercised reasonable diligence in seeking to mitigate damages. *See Gaddy v. Abex Corp.,* 884 F.2d 312, 318 (7th Cir.1989).

To carry this burden, the Defendants must show "that the course of conduct [P]laintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment." *See Barbour v. Medlantic Mgmt. Corp.,* 952 F.Supp. 857, 863 (D.D.C.1997) (holding defendants "bear the burden to establish a failure to mitigate as well as interim earnings" and that, defendants "must demonstrate that substantially equivalent positions were available and that the plaintiff failed to use reasonable diligence to obtain such positions.") (citing *Anastasio v. Schering Corp.,* 838 F.2d 701, 707 (3rd Cir.1988); *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983)); *E.E.O.C v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 925 (S.D.N.Y.1976), *aff'd,* 559 F.2d 1203 (2d Cir.1977); *Wills–Hingos v. Raymond Corp.,* 104 Fed.Appx. 773, 776, 2004 WL 1496887, \*3 (2d Cir.2004) (unpublished disposition) (affirming front pay award where defendant had failed to meet is burden of proven plaintiff had failed to mitigate because it offered no evidence as to the availability of comparable jobs). Here, Defendants have offered absolutely no evidence that Plaintiff has unreasonably failed to seek comparable employment. As such, the Court finds that Plaintiff has at least partially mitigated her losses for purposes of front pay.

■ Despite finding that Defendants have failed to meet its burden to show a complete failure to mitigate, Plaintiff still has a duty to mitigate her damages to the greatest extent reasonably possible by seeking comparable employment. *See Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 502 (8th Cir.1998). The Court finds that Plaintiff has not made such a showing sufficient to avoid a reduction in the front pay she requests. Weighing against the extensive front pay award requested by Plaintiff are: the likelihood that Plaintiff could have already obtained or could in the next several years obtain a comparably salaried position; the likelihood that Plaintiff could obtain reasonably comparable health and dental benefits in the next five years; and the fact that Plaintiff has not worked for Vermeer for three and one-half years and has already been compensated for that time in the form of back pay, interest, and liquidated damages. Moreover, Plaintiff offers no support for the number used to calculate her "Wages Earned" over the course of the next five years. Plaintiff asserts that she will likely make $20,280.00 per year, which equates to an hourly rate of $9.75 per hour for a forty-hour work week, that, however, fails to account for raises, promotions, other advancement opportunities, or full-time versus part-time employment. Likewise, Plaintiff has not indicated an unavailability of similarly salaried jobs or of jobs with benefits similar to those provided by Vermeer, nor has she provided evidence that she has applied for, but been denied such positions. Given these factors, the Court declines to award front pay for the full term requested by Plaintiff. Rather, the Court finds that an equitable and appropriate front pay award, given the finding that Plaintiff has partially, but incompletely attempted to mitigate her damages, is $15,512.76, equal to one year of Plaintiff's requested front pay. The Court specifically notes that an award of front pay for a longer period would simply be too speculative. Indeed, one year of front pay will equitably compensate Plaintiff for the current reduction in earnings at her present position and permits her a reasonable time frame to seek and obtain a position with benefits and salary similar to that she received at Vermeer.

### 3. *Interest*

■ Plaintiff requests prejudgment interest at the prime rate of 5.5%, compounded monthly. Defendants assert that prejudgment interest should be at the same rate as post judgment interest, and should not be compounded monthly. The post judgment interest rate is established by statute and is "a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). For the calendar week preceding the date of judgment in this matter, that is, the week ending February 11, 2005, the rate was 2.96%. *See* http://www.federalreserve.gov/releases/h15/data/wf/tcmly.txt.

Title 29, United States Code, section 2617 provides that when an employer violates the FMLA, such employer shall be liable to the employee for "the interest on the amount described in clause (I) calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii). Clause (I) equates in this matter to the jury's award for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation [of the FMLA]," or $107,571.97. *Id.* § 2617(A)(i)(I). Moreover, the language of section 2617 indicates that an award of interest is mandatory. *Id.* § 2617 ("Any employer who violates section 2615 of this title *shall* be liable to any eligible employee affected ....") (emphasis added). The

Eighth Circuit Court of Appeals has noted that prejudgment interest serves at least two purposes: "(1) it helps compensate plaintiffs for the true cost of money damages they have incurred, and (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation." *General Facilities, Inc. v. National Marine Serv., Inc.*, 664 F.2d 672, 674 (8th Cir.1981).

The difficulty in determining the appropriate rate of interest stems from the fact that section 2617 does not indicate what rate of interest should be considered the "prevailing rate." Courts use various sources for determining an appropriate prejudgment interest rate, such as the prime rate, *see Rice v. Sunrise Express, Inc.*, 237 F.Supp.2d 962, 970 (N.D.Ind. 2002) ("The Seventh Circuit provides that courts must use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.") (citing *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir.1998)); *McKelvy v. Metal Container Corp.*, 854 F.2d 448, 454 (11th Cir. 1988) (holding that the "interest rate for prejudgment interest on back pay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961"); *General Facilities, Inc. v. National Marine Serv. Inc.*, 664 F.2d 672, 674 (8th Cir.1981) ("Although the average prime rate is not the only possible standard, we cannot say it is unreasonable or an abuse of discretion to follow it as a guide."), the statutory post-judgment interest rate, *see Robinson v. Instructional Sys., Inc.*, 80 F.Supp.2d 203, 208 (S.D.N.Y. 2000) (Title VII); or the state statutory rate, *see In re Hayes*, 766 F.Supp. 818, 824 (N.D.Cal.1991); *Neufeld v. Searle Labs.*, 1988 WL 11640 (W.D.Mo.1988) (ADEA);

*see also* Iowa Code § 668.13 (prejudgment interest is calculated "as of the date of judgment at a rate equal to the one-year treasury constant maturity published by the federal reserve in the H15 report settled immediately prior to the date of the judgment plus two percent").

■ Generally, the decision of which rate of interest to apply for prejudgment interest is a " '[m]atter[ ] confided to the district court's broad discretion.' " *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir.1995) (quoting *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 613–14 (2d Cir.1994)). Here, the Court finds that the statutory interest rate under section 1961 is 2.96%, the state statutory rate is 4.96% and the prime rate is 5.5%. *See* http://www.federalreserve.gov/releases/h15/data/d/prime.txt. The Seventh Circuit has cautioned judges "against the danger of setting prejudgment interest rates too low by neglecting the risk, often nontrivial, of default." *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d at 436–37. The risk of default in this case is relatively low, however, given the fact that Vermeer is a large, well-established employer. Accordingly, the Court finds that, while the statutory interest rate under section 1961 is too low, the prime rate overestimates the risk of default. Accordingly, the Court awards prejudgment interest to Plaintiff on the jury's award at a rate of 4.96%, the state statutory rate, from the date of her termination from Vermeer, August 28, 2001, to the date of judgment, February 17, 2005.

Plaintiff also requests that the Court order that the interest rate be compounded monthly, but offers no support for this request. "As a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court." *American Nat.*

*Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 937 (7th Cir.2003) (citing *Gorenstein,* 874 F.2d at 437). Here, the Court can find no authority and no justification for an award of interest compounded monthly, as requested by Plaintiff. Under Title 28, United States Code, Section 1961, the post-judgment interest statute, interest is "computed daily to the date of payment ... and *shall be compounded annually.*" (emphasis added). Naturally, section 1961 does not provide a statutory basis for the compounding of prejudgment interest, *see Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, (Fed.Cir. 1984). It does, however, serve as a reasonable guidepost for determining whether to permit compound interest. The Court adopts the standard of the post-judgment interest statute, and finds that prejudgment interest in this matter shall be computed daily and compounded annually. Additionally, the Court awards post-judgment interest in accordance with section 1961, that is, at a rate of 2.96%, from the date of judgment, and computed daily to the date of payment, compounded annually.

### 4. *Liquidated Damages*

Under the FMLA, the defendant employer "shall be liable to any eligible employee affected [by a violation of the Act] ... [for] an additional amount as liquidated damages equal to the sum of the amount" of other damages and interest awarded pursuant to § 2617(a)(1)(A)(i) and (ii) of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). There is, however, an exception to "this otherwise mandatory call for liquidated damages." *Thorson v. Gemini, Inc.,* 205 F.3d 370, 383 (8th Cir. 2000). That is, if Vermeer and Leedom prove "to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for

believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively." 29 U.S.C. § 2617(a)(1)(A)(iii); *see also Thorson,* 205 F.3d at 383 (if good faith is shown, then "court in its discretion may decline the award of liquidated damages").

Defendants assert that they have shown good faith and that they reasonably believed they were not violating the FMLA when Plaintiff's employment with Vermeer was terminated. Defendants argue this is supported by the record because: 1) Plaintiff had eleven written warnings related to her employment prior to the incident that led to her termination; and 2) Defendant attempted to accommodate Plaintiff with her work schedule and the managerial employees of Vermeer firmly believed they were fully compliant with the FMLA. Plaintiff, on the other hand, points out that the jury specifically found that Defendants were not acting with a good faith belief that Vermeer was fully compliant with the FMLA when it terminated Plaintiff's employment.

To avoid a liquidated damages award, defendant bears the burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief its conduct did not violate the law. *See Hultgren v. County of Lancaster,* 913 F.2d 498, 509 (8th Cir.1990). The good faith requirement demands that defendant establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it. *See Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 917–18 (8th Cir.1991); *Marshall v. Brunner,* 668 F.2d 748, 753 (8th Cir. 1982). Other than their bald assertion that Vermeer believed it was acting in compliance with the FMLA, and the reci-

tation of Plaintiff's written warnings, Defendants offer no argument or authority to support their position. Indeed, at trial in this case, Plaintiff offered substantial evidence that, despite being aware of the mandates of the FMLA, Defendants harassed Plaintiff for using FMLA leave and eventually terminated her employment under the guise of breaking company policy against cell phone usage.

■ "Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established" between the protected activity and the adverse employment action. *See McBurney*, 398 F.3d at 1003. Plaintiff stated at trial that almost immediately after returning from FMLA leave, she received warnings from Leedom that her attendance was poor. Further, Plaintiff offered evidence that Vermeer contacted Plaintiff's doctor in violation of 29 C.F.R. § 825.307; shared Plaintiff's medical records with non-Vermeer employees, in violation of 29 C.F.R. § 825.500(g); and accused her of "abusing" her FMLA leave. These abuses of Plaintiff's rights under the FMLA make it more likely that a "retaliatory motive played a part in the adverse employment action." *Id.* (citing *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002)).

Overall, the testimony at trial left the Court with the distinct impression that, despite its proclamations to the contrary, Plaintiff's use of FMLA leave did weigh inappropriately into Defendants' decision to terminate Plaintiff's employment. Accordingly, the Court finds it unreasonable to conclude that Defendants believed they were acting in good faith in terminating Plaintiff's employment. For this reason, the Court adopts the finding of the jury that Defendants did not act in good faith and awards liquidated damages to Plaintiff

in an amount equal to $107,571.97, plus an amount equal to the prejudgment interest at a rate of 4.96%, calculated daily and compounded annually from the date of Plaintiff's termination to the date of judgment.

### C. *Attorneys Fees and Costs*

#### 1. *Attorney's Fees.*

Plaintiff next requests an award of attorney's fees and expenses. 29 U.S.C. § 2617(a)(3) requires: "The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." (emphasis added). Defendants do not dispute that Plaintiff is entitled to recover reasonable attorney's fees, reasonable expert witness fees, and reasonable costs. Defendants do, however, dispute the overall figures submitted by Plaintiff's attorneys as unreasonable.

Plaintiff requests $71,467.50 in attorney fees. This figure includes 315.5 hours by Beth Townsend and Paige Fiedler at a rate of $225.00 per hour, 3.9 hours by a legal assistant, and 2.5 hours by a law clerk, each at the rate of $75.00 per hour. Defendants assert that a reasonable hourly rate for attorney fees is $150.00 per hour, while a reasonable rate for paralegal time would be $50.00 per hour, and a reasonable rate for law clerk time would be $35.00 per hour. Defendants also argue that, while Plaintiff's attorneys voluntarily deleted time associated with Plaintiff's unsuccessful claim of ADA discrimination, that a percentage reduction is warranted because not all time for the ADA discrimination claim could reasonably have been deleted from the total hours claimed.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v.*

*Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In their resistance to Plaintiff's Motion for Attorney's Fees, Defendants do not object to the number of hours Plaintiff's counsel dedicated to the case. Indeed, Plaintiff offered a "Summary of Time" detailing the number of hours spent on various categories of case related research and trial preparation, including: 12.6 hours on pleadings, motions, and briefs; 4 hours on legal research, 55.2 hours on investigation and discovery; 6.2 hours interviewing witnesses; 148 hours trial preparation; 73.6 hours at trial; 3.2 hours in settlement negotiations; and 19.1 hours for "attorney fees." Plaintiff offered affidavits by both Ms. Fiedler and Ms. Townsend, indicating that the time billed was necessary and proper for the adequate prosecution of Plaintiff's case. Plaintiff also offers affidavits from Thomas Duff and Mark Sherinian indicating that the hours expended were fair and reasonable for a case of this nature.

The Eighth Circuit has adopted the guidelines for attorney's fees set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). *See Zoll v. Eastern Allamakee Cmty. Sch. Dist.,* 588 F.2d 246, 252 (8th Cir.1978); *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876, 884 (8th Cir.1977). In assessing attorney's fees, the district court must consider the following twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Zoll,* 588 F.2d at 252 n. 11. "Under the *Johnson* standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate." *Id.* at 252. "This statement, however, [is] not a complete limitation on the district court's discretion to award only 'reasonable' attorney fees, but only a general guideline to be followed in the absence of unusual circumstances." *Ladies Center, Neb., Inc. v. Thone,* 645 F.2d 645, 647 (8th Cir.1981). Indeed, the Court "remains free to determine the appropriate hourly rate to be paid to an attorney with the skill and experience of [Plaintiff's] counsel, and to determine the number of hours which should be required to competently prepare for and try a case of this type". *Id.* (citing *Brown v. Bathke,* 588 F.2d 634, 638 (8th Cir.1978)).

Evaluating the *Johnson* factors, the Court finds that the time and labor expended in preparing and litigating Plaintiff's FMLA claim is reasonable. Indeed, it appears that counsel efficiently and concisely prepared the case and expended as few hours as possible to competently litigate this matter. While FMLA claims are not particularly novel or difficult on their face, the Court recognizes that there is limited case law interpreting the provisions of the FMLA, and that much of the law is conflicting or intertwined with other types of cases, such as claims arising under Title VII. Thus, litigation of an FMLA claim poses some novel and difficult questions due to the lack of clear guidance on the issues. The Court finds, then, that sub-

stantial skill is necessary to litigate this sort of claim, particularly in light of the emotional nature of the case. Likewise, the Court recognizes that litigation of a case such as the present one requires a substantial expenditure of time and precludes the attorneys' participation in other cases, at least to some extent.

■ Plaintiff's counsel have presented ample evidence indicating that their hourly rate of $225.00 is their standard rate for handling matters such as Plaintiff's. Counsel have also presented affidavits from several lawyers in the community supporting a finding that the rates charged by Plaintiff's counsel are reasonable within this community, particularly for highly skilled and experienced attorneys such as Ms. Fiedler and Ms. Townsend. Courts are to look to the marketplace as a guide in determining what is a "reasonable" attorney fee. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (reasonableness of requested rates is to be determined with reference to rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation). "In addition, when fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir.2005) (finding $200 per hour constituted a reasonable hourly attorney fee where lawyers were highly experienced and noting "that in another appeal we recently approved an hourly rate of $250" and that " nearly ten years ago we affirmed an Arkansas district court's use of a $200 per hour rate to calculate a fee award.") (citing *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1330 (8th Cir.1995)).

Also relevant to the reasonableness of the requested fee is the fact that Plaintiff's counsel accepted this case on a contingency fee basis. With a standard one-third fee in Iowa for contingency cases, counsel could easily be entitled to a full one-third of Plaintiff's entire award. Without factoring prejudgment or post judgment interest, one third of Plaintiff's damage award and liquidated damages award equates to approximately $71,000, almost exactly what Plaintiff's counsel requests for fees. This contingency amount does not account for any interest or Plaintiff's award of front pay, each of which would substantially increase the contingency amount over and above what counsel requests as lodestar fees. Plaintiff's counsel took a substantial risk that no money would ever be recouped for their services in this case, as Plaintiff was under no obligation to pay counsel should her claim have failed in its entirety.

■ "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. State of Missouri,* 127 F.3d 709, 716 (8th Cir.1997). "If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win." *Id.* In the present case, Plaintiff's counsel ably and thoroughly litigated her FMLA claim. Both attorneys have outstanding resumes and clearly were well prepared for trial and experienced in this type of litigation. Specifically, the Court notes that, with declining jury trial rates across the country, the present case represents the seventeenth jury trial case tried by Ms. Fiedler and the sixth by Ms. Townsend in the area of employment discrimination. The Court has no doubt that the expertise of both lawyers played a substantial role in Plaintiff's receipt of a jury verdict equating to the full amount of damages requested on her FMLA claim. The result cannot be deemed anything less

than a victory for the Plaintiff, particularly considering the stigma associated with mental illnesses such as depression and the difficulty in presenting such a case to a jury. Finally, similar fee awards have been routinely upheld in FMLA cases such as this one. *See e.g., Estes v. Meridian One Corp.,* 6 Fed. Appx. 142, 2001 WL 285076 (4th Cir.2001) (award of $70,711 in attorney fees and $5,381.83 in costs was appropriate despite limited success on FMLA claims); *Hoge v. Honda of America Mfg., Inc.,* 2003 WL 1338227 (S.D.Ohio 2003) (awarding $18,212.50 attorney's fees and $1,244.99 costs despite Plaintiff's damage award of only $3,781.20 and liquidated damages were denied); *Sherry v. Protection, Inc.,* 14 F.Supp.2d 1055 (N.D.Ill.1998) (after settlement of FMLA claim for $5000.00, court awarded $12,851.50 in attorney's fees); *Churchill v. Star Enterprises,* 1998 WL 254080 (E.D.Pa.1998) (awarding $52,018.20 attorney's fees despite total Plaintiff's award under FMLA of $18,337.22, and finding that no reduction in fees was warranted because Plaintiff's recovery was limited by the terms of the FMLA itself).

Defendants have not offered any case law indicating why its proffered rates are more reasonable than those routinely earned and proposed by counsel in the present case. Accordingly, the Court can see no reason why the requested attorney's fees are not reasonable after consideration of the *Johnson* factors. The only question remaining is whether the award should be reduced at all in light of Plaintiff's lack of success on her ADA claim, which the Court dismissed on Defendants' motion for judgment as a matter of law. Plaintiff's counsel asserts, and Defendants do not dispute, that they attempted to remove all billing related only to the ADA claim from their request for attorney's fees. Nonetheless, there are necessarily some hours of ADA work still included within the billing statements because the facts upon which both the ADA and the FMLA claims were founded are generally identical.

 It is well within the Court's discretion to reduce an attorney's fee award based on the lack of success of some claims. *See e.g., Warnock,* 397 F.3d at 1026 ("There is 'no precise rule or formula' for making fee determinations in cases with only partial success, and where, as here, the court cannot separate out which hours were billed for which issues, we 'may simply reduce the award to account for the [plaintiff's] limited success.'") (citation omitted); *Shepherd v. Honda of Am. Mfg., Inc.,* 160 F.Supp.2d 860 (S.D.Ohio 2001) (court reduced attorney's fee award in case where plaintiff brought successful FMLA action, but included unsuccessful claims for intentional infliction of emotional distress and for punitive damages). The Supreme Court in *Hensley* made clear that such a reduction can be considered "where the plaintiff advances discrete, essentially unrelated claims, and prevails on some but not others, it should not be compensated for work on the unsuccessful claims." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. Where as here, however, the lawsuit consists of inextricably intertwined claims and the "plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee, and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *City of Riverside v. Rivera,* 477 U.S. 561, 562, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Indeed, the Eighth Circuit Court of Appeals has held: "Once a party is found to have prevailed, '[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit.'" *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 806 (citing *Hendrickson v. Branstad,* 934 F.2d 158, 164 (8th Cir.1991) ("A lawsuit ...

which includes several related legal theories based on a common core of facts, should not be viewed as a series of discrete causes of action, and compensation should not be awarded on a claim-by-claim basis."). "In such a case, counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonably expended to achieve a successful result." *Hendrickson*, 934 F.2d at 164.

█ While this Court recognizes its authority to reduce an award of attorney's fees for limited success, it declines to do so in this case. Plaintiff's FMLA and ADA claims arose from precisely the same alleged conduct, not just from a similar set of core facts. While Plaintiff could potentially have recovered some additional measures of damages had her ADA claim been successful, "the gauge of success is the result of the lawsuit in terms of relief; there should not be a downward adjustment simply because not every argument or theory prevailed." Alan Hirsch & Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* at 29 (Federal Judicial Center 1994) (citations omitted). Accordingly, the Court finds that all claims in the present case were related, legally and factually. The Court also finds that counsel has removed, to the maximum extent possible, any hours from its billing documents that solely related to Plaintiff's ADA claim. Finally, the Court concludes that, while the ADA claim was unsuccessful, it was raised in good faith and Plaintiff's ultimate award of damages was not substantially hindered by its dismissal. As noted, *supra*, Plaintiff's success in this case can be deemed nothing but a victory. Accordingly, counsel should receive fully compensatory fees for their work on this litigation "as a whole" in the reasonable lodestar amount of $71,467.50.

2. *Expenses.*

Plaintiff next requests $2,947.52 in expenses, which includes copying costs, supplies, postage, mileage, parking, long distance phone charges, research charges, and expert witness fees for Plaintiff's treating physician, Dr. Nancy Vander Broek. Defendants' only objections to Plaintiff's requested expenses are: 1) to the $50.00 new file charge dated 11/4/2004; 2) to a photocopying expense of .25 per page; and 3) to expert fees for Dr. Vander Broek because she did not testify as an expert witness.

█ As noted, *supra*, 29 U.S.C. § 2617(a)(3) requires that "The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, *reasonable expert witness fees, and other costs of the action to be paid by the defendant.*" (emphasis added). Normally, reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client are includable in a statutory award of fees. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996) (citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir.1986); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir.1984); *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir.1979)). Such expenses routinely include costs for long distance telephone calls, facsimiles, express mail and postage, messenger services, and reasonable travel expenses. *See Pinkham*, 84 F.3d at 295 (costs for long distance, faxes, messenger and express mail are expenses normally charged to clients); *Kelly v. Bowen*, 862 F.2d 1333, 1335 (8th Cir.1988) (telephone calls, postage, and air courier costs normally billed); *International Woodworkers of Am., AFL–*

*CIO v. Donovan,* 792 F.2d 762 (9th Cir. 1985) (recognizing that fee statutes generally provide for recovery of costs "ordinarily billed to a client"); *Northcross,* 611 F.2d at 639 (reasonable photocopying expenses are recoverable).

■ Here, the Court has reviewed the expenses claimed by Plaintiff's attorneys and finds them to be of the type normally billed to clients. There is no indication in the record, other than in regard to those items objected to by Defendants, that any of the charges are unreasonable or atypical, with one exception. It is well settled in the Eighth Circuit that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." *See Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 695 (8th Cir. 1983). Accordingly, the Court concludes that plaintiff cannot recover $826.00 expended on computer-aided research. With regard to the remaining items to which Defendants object, the Court will address each in turn.

■ Defendants first object to the $50.00 new file charge. Plaintiff's counsel asserts that this "is a charge which all clients pay Plaintiff's law firm and for which Plaintiff is ultimately personally responsible." On the expense invoice, the charge is listed as "supplies to open new file." The Court believes that this item is part of the cost of operating a law practice and not an "expense" that can be recovered from defendants under the fee-shifting statute in this case. Accordingly, the expense is not recoverable. Defendants next object to a fee of $ .25 per page for photocopying. A total of 6284 pages were photocopied. This equates to an expense, according to Plaintiff, of $1,571.00. The Court agrees with defendants that the rate of $.25 per page is excessive. Accordingly, the Court awards photocopying expenses

at the more reasonable rate of $.15 per page, for a total copying expense allowance of $942.60. Finally, Defendants object to Plaintiff's request for $275.00 for travel time and the testimony of Dr. Vander Broek, for a period of approximately 2.75 hours. Defendants assert that Dr. Vander Broek did not testify as an expert witness and fees are, therefore, not recoverable. Plaintiff counters that, "[p]hysicians must be paid for the time they spend testifying and away from paying patients, regardless of it they are testifying as an 'expert' or a treating physician."

■ The Court agrees that Dr. Vander Broek was not designated as an expert witness prior to trial. Despite this fact, Dr. Vander Broek did offer substantial testimony about the factors which could cause or exacerbate Plaintiff's medical condition. Several courts have found that treating physicians are entitled to reasonable fees over and above the standard $40 statutory witness fee. *See e.g., Baker v. John Morrell & Co.,* 263 F.Supp.2d 1161, 1206 (N.D.Iowa 2003) (adopting view that treating physicians should ordinarily be allowed a reasonable fee beyond the statutory limit); *Scheinholtz v. Bridgestone/Firestone, Inc.,* 187 F.R.D. 221, 222 (E.D.Pa.1999) (approving substantially higher fee for treating physician's deposition); *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 645–46 (E.D.N.Y.1997) (finding $250 per hour to be reasonable fee for treating psychiatrist's deposition); *Hose v. Chicago & North W. Transp. Co.,* 154 F.R.D. 222, 225–27 (S.D.Iowa 1994) (finding $400 per hour to be reasonable fee for treating neurologist's deposition). Accordingly, the Court finds that, while not specifically recoverable as fees for an expert witness pursuant to 42 U.S.C. § 1988, the fees of a treating physician for travel and testimony time are the type of fees routinely billed to clients in this type of

litigation. As noted by the United States District Court for the Northern District of Texas:

> Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are [t]reating a patient or testifying about one. Litigators and their clients typically obtain physician testimony by deposition rather than by imposing the additional burdens associated with attendance at trial. They also respect the need to compensate physician-witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise.

*Haslett v. Texas Indus., Inc.*, 1999 WL 354227, at * 2 (N.D.Tex.1999). Dr. Vander Broek did travel from Pella to Des Moines for trial, and did offer substantial testimony at trial. The fees requested are extremely reasonable, amounting to only about $100 per hour. As other courts have stated: "[R]egarding in particular the ethical and legal duties that physicians owe their patients we should accept 'that part of a doctor's duty of total care' requires him to offer his medical testimony on behalf of his patient if the patient becomes involved in litigation over the injury or illness which the doctor treated." *See Spaulding v. Hussain*, 229 N.J.Super. 430, 551 A.2d 1022,1027 (1988). We should expect that the law, in turn, will see that they are reasonably compensated for performing their legal and ethical duty. Accordingly, the Court finds the fees reasonable and recoverable and Defendants' objection is overruled.

For the reasons stated herein, the Court awards expenses in favor of Plaintiff in the amount of $1,443.12. This specifically equates to $942.60 for copying fees, $275.00 for Dr. Vander Broek's travel and testimony, $76.40 in postage, $99.55 in mileage/parking, $19.50 in long distance charges, $.07 for records, and $30.00 for delivery/errands.

### 3. *Taxation of Costs*

Finally, Plaintiff requests that the Court tax the following costs to Defendants: filing fees of $185.20, witness fees of $222.06, fees for exemplification and copies of papers necessarily obtained for use in the case of $429.94, costs incident to the taking of depositions in the amount of $2,492.87, and other costs related to service of subpoenas in the amount of $768.45, for a total of $4,098.52. Defendants object to the bill of costs only to the extent it seeks fees for the deposing the following individuals: Mark Roudebush, Larry Ford, Cornelius Van Walbeek, William Roberts, Jeff Paxton, Marvin Van Wyk, Rebecca Nichols, Denise Hite, Gary Coppick, Gerry Williams, and Dr. Vander Broek. Defendants assert that fees for these depositions should not be allowed as the depositions were not used at the time of trial.

The Court notes first that Cornelius Van Walbeek, Jeff Paxton, Marvin Van Wyk, Rebecca Nichols, Denise Hite, Gerry Williams, and Dr. Vander Broek all testified at trial. It is clear in regard to these witnesses that deposition transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Only Mark Roudebush, Larry Ford, Williams Roberts, and Gary Coppick did not testify at trial. With respect to these four witnesses, each was listed in Defendants' initial disclosures as potential witnesses in the case, and all except Gary Coppick were listed on the Final Pretrial Order as potential trial witnesses. Accordingly, the Court finds that Plaintiff has adequately shown that the contested depositions, with the exception of Gary Coppick's deposition, were necessary to her case and were not purely in-

vestigative in nature. Accordingly, with the exception of $50.62 for Coppick's transcript, all requested fees are approved as taxable. *See Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir.1997) (quoting *Slagenweit v. Slagenweit*, 63 F.3d 719, 720 (8th Cir.1995)) (fees incurred in connection with deposition transcripts may be awarded if "the deposition 'was necessarily obtained for use in a case' and was not 'purely investigative.'"). The Clerk of Court shall tax costs to the Defendants in the amount of $4,047.90.

## III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Judgment as a Matter of Law, Motion for New Trial and Motion to Amend Judgment (Clerk's No. 41) is DENIED. Plaintiff's Motion for Equitable Relief, Front Pay, Interest, and Liquidated Damages (Clerk's No. 40) is GRANTED in part:

1) Plaintiff is awarded prejudgment interest at the rate of 4.96%, calculated daily and compounded annually;

2) Plaintiff is awarded liquidated damages in an amount equal to $107,571.97, plus an amount equal to the prejudgment interest;

3) Plaintiff is awarded post-judgment interest at the rate of 2.96%, from the date of judgment, and computed daily to the date of payment, compounded annually.

4) Plaintiff is awarded front pay in the amount of $15,512.76

With regard to Plaintiff's Motion for Attorney's Fees and Expenses (Clerk's No. 43), the motion is GRANTED. The Court awards $71,467.50 attorney's fees, and $1,443.12 expenses. Further, the Clerk of Court shall tax costs against the Defendant in the amount of $4,047.90.

IT IS SO ORDERED