**SUN MEDIA SYSTEMS, INC., Plaintiff,**

v.

**KDSM, LLC and Sinclair Broadcast Group, Inc., Defendants.**

**No. 4:06–cv–106.**

United States District Court, S.D. Iowa, Central Division.

Nov. 24, 2008.

Trent C. Keisling, Meredith K. Lowry, Stephen Douglas Schrantz, John M. Scott, Eric F. Turner. Keisling Pieper & Scott PLC, Fayetteville, AR, for Plaintiff.

Michael J. Collins, Michael S. Libowitz, Thomas & Libowitz PA, Baltimore, MD, J. Campbell Helton, Whitfield & Eddy, PLC, Des Moines, IA, for Defendants.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendants' Motion for Attorney Fees and Costs. Clerk's No. 89. Plaintiff filed a resistance to the motion (Clerk's No. 94), and Defendants replied (Clerk's No. 95). The matter is fully submitted.

## I. PROCEDURAL BACKGROUND

On or about March 16, 2006, Sun Media filed a Complaint in the present action. Clerk's No. 1. Sun Media filed an Amended Complaint on December 8, 2006 (Clerk's No. 23), and filed a Second Amended Complaint on August 21, 2007. Clerk's No. 40. In the Second Amended Complaint, Sun Media asserted the following four claims against Defendants KDSM, LLC ("KDSM") and Sinclair Broadcast Group, Inc. ("Sinclair") (collectively "Defendants"): 1) copyright infringement against both Defendants; 2) breach of contract against KDSM; 3) misappropriation of trade secrets against KDSM; and 4) misappropriation of trade secrets against Sinclair. *Id.* On November 1, 2007, Defendants filed a Motion for Summary Judgment on all counts of Plaintiff's Second Amended Complaint. Clerk's No. 54. On July 1, 2008, the Court entered an Order granting Defendants' Motion for Summary Judgment. Clerk's No. 84. Plaintiff filed a Motion for Reconsideration of the Court's Order granting summary judgment on July 11, 2008. Clerk's No. 86.

The Court denied the Motion for Reconsideration on September 10, 2008. Clerk's No. 96.

## II. LAW AND ANALYSIS

Defendants assert that the Court should award costs and attorneys' fees in Defendants' favor in the amount of $412,512.60.[1] As authority for such an award, Defendants cite Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, Iowa Code § 550, and 17 U.S.C. § 505.

### A. *Costs*

Federal Rule of Civil Procedure 54(d)(1) provides:

Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court otherwise directs.... Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Fed.R.Civ.P. 54(d)(1). Regarding permissible costs, 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

■ The Eighth Circuit Court of Appeals has found that the district court enjoys relatively broad discretion, "so long as it does not act arbitrarily," in awarding costs under Rule 54 and § 1920. *See Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir.2002); *Hibbs v. K-Mart Corp.*, 870 F.2d 435, 443 (8th Cir. 1989) (emphasizing that both § 1920 and Rule 54 are phrased in permissive terms) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) ("Section 1920 ... is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party.")). Despite this discretion, "[w]hen an expense is taxable as a cost ... there is a strong presumption that a prevailing party shall recover it 'in full measure.' The 'losing party bears the burden of making the showing that an award is inequitable under the circumstances.'" *Concord Boat*, 309 F.3d at 498 (quoting *In re Paoli*, 221 F.3d 449, 462–63 (3d Cir. 2000)).

Defendants requested costs total $57,164.60, which includes $542.96 for in-house photocopy charges; $13,580.64 for photocopy charges incurred with Lex Business Solutions; $1,627.16 in federal express/UPS charges ($1,406.96 by out-of-state counsel and $220.20 by local counsel);

---

1. Page 6 of Defendants' Itemization of Fees and Costs cites the total requested fees and costs as $412,962.60. *See* Clerk's No. 89, Ex. 2 at 6. This figure, however, appears to be an incorrect sum calculation of the requested attorneys' fees ($355,348) and costs ($57,-164.60).

$789.08 in Westlaw charges; $9,768.03 in attorney travel expenses; $8,105.76 in deposition reporter expenses; $22,600.97 in expert fees; and $150.00 for pro hac vice admissions. The Court will address each item in turn.

▆▆▆ Defendants first request costs for copies ($542.96 for in-house copies and $13,580.64 for vendor copies) and for Federal Express and UPS charges ($1,627.16). While it is not clear that all of the claimed copying expenses were necessarily obtained for use in the case within the meaning of 28 U.S.C. § 1920(4), Plaintiff does not raise an objection that the expenses for copying and shipping were somehow unnecessary. Rather, Plaintiff cites a case from the Eastern District of Pennsylvania for the proposition that "such costs as postage and attorney travel are generally considered noncompensable operating or overhead expenses." Pl.'s Resistance Br. at 4 (citing *Bly v. Banbury Books, Inc.,* 638 F.Supp. 983, 989 (E.D.Pa.1986)). *Bly,* however, was considering an award of costs exclusively under 17 U.S.C. § 505, not under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.[2] *See Bly,* 638 F.Supp. at 989 ("Plaintiff cites no cases holding that expenses such as [postage, telephone calls and attorney travel] are compensable under the Copyrights Act, and therefore I will not allow them."). Under § 1920(4), copying fees are precisely the type of expenses normally allowed as costs in the Eighth Circuit. *See Madison v. IBP, Inc.,* 149 F.Supp.2d 730, 812 (S.D.Iowa 1999) (rev'd in part on other grounds, subsequent history omitted).

The plain language of § 1920 does not authorize expenses other than those for "exemplification and copies," however, and much authority provides that expenses for items such as facsimiles, express mail and postage are not permitted under § 1920. *See, e.g., Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–95 (8th Cir.1996) ("[C]osts for long distance and fax and for messenger and express mail ... are not 'exemplification and copies of papers necessarily obtained for use in the case' under 28 U.S.C. § 1920(4)."); *Antolik v. Saks Inc.,* 407 F.Supp.2d 1064, 1079 (S.D.Iowa 2006) (awarding postage, express mail and fax expenses as part of a statutory award of attorneys' fees because such expenses were not recoverable under § 1920) (reversed on other grounds); *de Llano v. North Dakota State Univ.,* 951 F.Supp. 168, 172 (D.N.D.1997) ("The other charges, for telephone calls, facsimile transmissions, postage, mileage, lodging, and computerized legal research are not recoverable as 'costs' under 28 U.S.C. § 1920.") (reversed on other grounds). Accordingly, the Court will permit the copying charges totaling $14,123.60 to be taxed as costs, but disallows as costs the claimed shipping expenses.[3]

▆▆▆ Defendants next request Westlaw expenses of $789.08. While Plaintiff does not raise a specific objection to this requested expense, it is well settled in the Eighth Circuit that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost...." *Leftwich v. Harris–*

---

**2.** Notably, the Eighth Circuit Court of Appeals in *Pinkham* expressly limited the types of costs recoverable under 17 U.S.C. § 505 to "the costs expressly identified in 28 U.S.C. § 1920." *Pinkham v. Camex, Inc.,* 84 F.3d 292, 295 (8th Cir.1996).

**3.** While disallowed as costs, the Court will nonetheless consider this item as part of the requested attorneys' fee award. *See Antolik,* 407 F.Supp.2d at 1079 (awarding postage and shipping expenses as part of attorneys' fee award); *Hite v. Vermeer Mfg. Co.,* 361 F.Supp.2d 935, 955 (S.D.Iowa 2005) ("Normally, reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client are includable in a statutory award of fees.").

*Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir.1983). Accordingly, the Court concludes that Defendants cannot recover the requested Westlaw fees as costs.[4]

■ Defendants next request $9,768.03 for attorney travel expenses, including airfare, hotels, car rentals, meals, parking, and copying charges. Again, Plaintiff does not raise any objection that the claimed expenses are excessive or otherwise unnecessary. Rather, Plaintiff relies on *Bly* for the proposition that travel expenses are noncompensable. *See* Pl.'s Resistance Br. at 4 (citing *Bly*, 638 F.Supp. at 989). Unlike copying costs, travel expenses are not specifically authorized by the language of either Rule 54 or § 1920, and a great deal of authority indicates that expenses not specifically listed in § 1920 are not recoverable thereunder. *See, e.g., Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir.1997) (outlays for travel and related expenses are not listed in 28 U.S.C. § 1920 and, therefore, may not be reimbursed as costs); *UNI–Systems, Inc. v. Delta Air Lines, Inc.*, No. 4–96–973, 2002 WL 505914, at *3 (D.Minn. Mar.28, 2002) ("It is also well established that attorneys' travel expenses are generally not allowable costs under § 1920.") (citing *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421, 439 (E.D.Mo.1985) ("Absent extraordinary or compelling circumstances, travel of attorneys is not a taxable cost of taking depositions.")). The Court finds that attorney travel expenses are not authorized by § 1920 and, therefore, disallows the asserted expense as a taxable cost.[5]

■ Defendants request $8,105.76 in deposition reporter expenses. Plaintiff objects to this claimed expense on the basis that Mr. Tandy, the president of Sun Media, was deposed three times. According to Plaintiff, "[t]he number of depositions for Sun Media was not reasonably necessary at the time as Mr. Collins repeated many questions that were asked in the previous depositions. Therefore, this Court should deny Defendants' request for costs with regards to the depositions." Pl.'s Resistance Br. at 5. Plaintiff does not point the Court to any specific places where the deposition questions asked of

4. While the Court believes that Westlaw expenses should be considered as part of an attorneys' fee award as the type of "reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client," *see Hite*, 361 F.Supp.2d at 955, the Court is prohibited by Eighth Circuit precedent from awarding computer-aided legal research fees as part of any attorneys' fee award. *See Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) ("[T]he law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award."). The Court notes that it respectfully disagrees with the Eighth Circuit on this issue for the same reasons discussed in *Emmenegger v. Bull Moose Tube Co.* and the cases cited therein. *See Emmenegger*, 33 F.Supp.2d 1127, 1137 (E.D.Mo.1998) (collecting cases and stating that "*Standley*'s holding that counsel must simply raise their hourly rates across the board if they wish to recover this expense ignores the marketplace decision made by law firms that they should only charge CALR expenses to those clients and matters which incurred the out-of-pocket expense"); *see also Haroco v. Am. Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440–41 (7th Cir. 1994) ("The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.").

5. To the extent that Defendants' claimed attorney travel expenses incorporate any copying charges, the Court notes that such charges would be permissible under § 1920(4). The Court sees no reason, however, to parse those charges out for purposes of taxable costs since they are equally recoverable as part of any attorneys' fee award. The Court will also consider the travel expenses generally as part of the requested attorneys' fee award.

Mr. Tandy overlap. Indeed, the Court has reviewed the deposition testimony of Mr. Tandy proffered in this case and finds that, to the extent there is overlap in questioning, such questioning was still entirely reasonable given the fact that Mr. Tandy was, for all practical purposes, the Plaintiff in this action. The Court further finds that any overlap in questioning was reasonable given the fact that Mr. Tandy's claims of Defendants' liability were, at all times, vague and amorphous. Accordingly, the Court finds the requested deposition reporter fees reasonable and will tax them as costs.

■■■ Defendants next request an expert witness fees totaling $22,600.97 ($1,875.00 for Dr. Michael L. Sandberg and $20,725.97 for Mr. Marc Schlather). Plaintiff correctly points out that the Eighth Circuit Court of Appeals "has specifically limited expert witness fees in excess of the 28 U.S.C. § 1821(b) $40 per day limit as being not recoverable." Pl.'s Resistance Br. at 4 (citing Pinkham, 84 F.3d at 295). Defendants' Reply Brief concedes Plaintiff's argument in this regard and appears to abandon its claim for expert fees. See Defs.' Reply Br. at 6 (stating that all costs requested by Defendants are recoverable as either a cost or as part of any reasonable attorneys' fee award: "The only exceptions are the expert fees, which Defendants acknowledge are not recoverable 'costs.' "). Accordingly, the expert witness fees will not be permitted as either a cost or as part of any attorneys' fee award.[6]

■■■ Defendants finally request $150 for pro hac vice admissions. Neither Rule 54 nor § 1920 specifically authorize pro hac vice admission fees to be taxed as costs, and most courts dealing with the question have found that such fees are not recoverable under § 1920. See, e.g., Rakes v. Life Investors Ins. Co. of Am., No. 06-cv-99, 2008 WL 4852932, at *5 (N.D.Iowa Nov.7, 2008) (citing cases); Romero v. United States, 865 F.Supp. 585, 594 (E.D.Mo.1994) (concluding pro hac vice fees are not costs because "[s]uch fees are an expense of counsel for the privilege of practicing law in this Court. Such expenses are not normally charged to a fee-paying client"), but see Glastetter v. Sandoz Pharm. Corp., No. 1:97cv131, 2000 WL 34017154, at * 1 n. 1 (E.D.Mo. Oct.3, 2000) ("Although Plaintiffs cite Eagle Ins. Co. v. Johnson, 982 F.Supp. 1456, 1458 (M.D.Ala. 1997) for the proposition that costs associated with the filing of pro hac vice motions are not taxable to a losing party, this Court concludes that 28 U.S.C. § 1920 should not be construed so narrowly as to preclude the taxing of such costs."). This Court has historically read § 1920 narrowly, and concurs with those courts that have concluded that pro hac vice fees are not recoverable costs under § 1920. In summary, then, the Court awards $22,229.36 in taxable costs to Defendants under Rule 54 and § 1920, which amount includes: 1) $14,123.60 in copying expenses; and 2) $8,105.76 in deposition reporter expenses.

### B. Attorneys' Fees

Defendants assert that an award of attorneys' fees is proper under both the Copyright Act and the Iowa Uniform Trade Secrets Act ("IUTSA").[7] See 17 U.S.C. § 505; Iowa Code § 550.6(1).

---

**6.** The Court notes that it will not award the $40 daily attendance fee because Defendant did not request any attendance fees for the expert witnesses under 28 U.S.C. § 1821(b) and because it is not clear from the record whether either expert appeared "before any person authorized to take his deposition" such that they could be deemed in "attendance" within the meaning of the statute.

**7.** Plaintiff's trade secret claims in Counts III and IV arose under IUTSA, while the infringement claims in Count I arose under the Copyrights Act. Defendants have not claimed that

### 1. *The Copyright Act.*

 The Copyright Act provides: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). While " '[t]here is no precise rule or formula for making these determinations,' " several factors have been identified as appropriate for consideration in determining whether attorneys' fees should be awarded in any particular case. *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Such factors include " 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id.* at 535 n. 19, 114 S.Ct. 1023 (quoting the factors identified by *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 156 (1986), and agreeing that "such factors may be used to guide courts' discretion, so long as [they] are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner"); *see also Action Tapes, Inc. v. Mattson,* 462 F.3d 1010, 1014 (8th Cir.2006) (listing the factors identified in *Fogerty* as factors courts should consider in exercising their equita-

ble discretion to award attorneys' fees under § 505).

Defendants contend that the Court's findings in its July 1, 2008 Order all weigh in favor of an award of attorneys' fees when considering the *Fogerty* factors. Defendants specifically claim that Plaintiff's actions in bringing and maintaining its copyright claims were unreasonable, frivolous, and in bad faith, and that an award of attorneys' fees will further the purposes of the Copyright Act and deter Plaintiff from undertaking such unfounded actions in the future. Plaintiff acknowledges that the *Fogerty* factors are appropriate considerations, but emphasizes that the Court is not required to award attorneys' fees under § 505. Plaintiff further argues that it did not act frivolously or unreasonably in bringing its copyright claims, and that an award of attorneys' fees would deter the purposes of the Copyright Act. Plaintiff urges that it "asserted colorable copyright claims against Defendants as noted by the similarities in Defendants' mailers, Defendants' presentations, and Sun Media's copyrighted materials," and that "[d]enial of attorneys' fees is all the more appropriate when the plaintiff asserts colorable copyright claims of the type which 'section 505 is intended in part to encourage.' " Pl.'s Resistance Br. at 10 (quoting *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.,* 785 F.2d 897, 916–17 (11th Cir.1986)). Plaintiff further argues that, should the Court find an award of fees appropriate under § 505, it should reduce the allowable fees for a variety of reasons.

The Court discussed the deficiencies of Plaintiff's copyright claim in detail in its July 1, 2008 Order and incorporates that Order herein by reference. The Court,

they are entitled to an award of attorneys' fees with respect to Count II, the Iowa breach

of contract claim.

however, highlights the following findings regarding the legal sufficiency of Plaintiff's claims:

1) Tandy stated during deposition that one aspect of Plaintiff's copyright that Defendants infringed upon was the "sequence." *See* Clerk's No. 84 at 43. Plaintiff does not dispute that, throughout discovery, it maintained that the sequence was copyrightable, despite language in the Copyright Act specifically excluding from copyright protection "procedure[s]" and "process[es]." *Id.* at 44. It was not until Plaintiff responded to Defendants' Motion for Summary Judgment that Plaintiff relinquished this claim, finally stating that "Sun Media does not claim that Sun Media's sequence is protected by copyright law." *Id.*

2) The Court found that Plaintiff had presented prima facie evidence that it had valid copyrights in Exhibits O, H, and M and that Plaintiff had satisfied the "original work" requirement for copyright protection. The Court noted, however, that while it was finding the originality requirement satisfied for purposes of the Motion for Summary Judgment, the originality of the works in question was "dubious at best, particularly with regard to the mailers themselves," finding that "nowhere has Plaintiff indicated that any of the artwork employed.in the copyrighted mailers was that of Sun Media" and that "Plaintiff has made no effort to clarify how the copyrighted

materials here at issue qualify as original." *Id.* at 49, n. 40.

3) In employing the *Hartman v. Hallmark Cards, Inc.* test [8] with respect to Exhibit O, the Court noted that Plaintiff had asserted throughout the proceedings that no less than 42 of Defendants' mailers infringed on Exhibit O.[9] Plaintiff insisted that the Court could not make a reasonable comparison of the copyrighted work and the allegedly infringing works because Defendants had not presented the originals of the 42 mailers for the Court's consideration. The Court pointed out, however, that Plaintiff had "likewise not provided the Court with an original of Exhibit O, making comparison of the 'look and feel' equally difficult due to Plaintiff's failing." *Id.* at 52.

4) The Court noted that Plaintiff had pointed only to vague similarities between Exhibit O and the allegedly infringing Exhibit E, stating: "In attempting to discern *what* about Exhibit O Plaintiff claims was infringed, however, the Court faces the same problem it had with regard to Plaintiff's asserted trade secrets, that is, an utter lack of clarity and particularity on the question of what is 'substantially similar' between Exhibit O and the allegedly infringing mailers." *Id.* at 53–54.

5) The Court noted several similarities and dissimilarities between Exhibits O and E, but stated that it "[could not] conclude that there is substan-

---

**8.** The Court determined that Plaintiff had not presented direct evidence that Defendants copied its works and, therefore, had to establish: "1) that Defendants had access to Plaintiff's copyrighted work; and 2) that there is a substantial similarity between the works." Clerk's No. 84 at 50 (citing *Hartman v. Hall-*

*mark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)).

**9.** Thirteen of the allegedly infringing mailers were identified *after* the Second Amended Complaint was filed, and 26 of the allegedly infringing mailers were identified *after* the close of discovery. Clerk's No. 84 at 52.

tial similarity of the general ideas and also of the expressions of those ideas, as required by the first step in the *Hartman* test." *Id.* at 57. Specifically, the Court stated that there were "minor similarities between the two mailers," but that, "[v]iewed on the whole ... these similarities are not 'substantial,' but rather reflect the types of similarities one would expect to see in any direct mailer received from any television station." *Id.* at 59. Moreover, the Court stated, "Even to the extent that there are objectively discernable similarities between Exhibits O and E, such similarities are of 'ideas' or other elements that are not copyrightable." *Id.* at 60. The Court agreed with Marc Schlather's conclusion that the " 'myriad differences between Exhibit E and Exhibit O are clear, unmistakable and numerous,' and that '[t]he few similarities are innocuous, with no discernable pattern beyond generic functional considerations or common industry practices in terms of printing, graphic design or promotion.' " *Id.* at 62.

6) The Court held that even if Plaintiff could satisfy the first step of the *Hartman* analysis, "the differences between the mailers are so significant that it is simply not reasonable to think that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two mailers] as the same,' " meaning that Plaintiff could not demonstrate "that ordinary, reasonable persons could find a substantial similarity of expression" as required by the second step of the *Hartman* analysis. *Id.* at 62 (citations omitted).

7) With regard to other documents alleged to infringe on Exhibit O, Plaintiff offered "absolutely no argument or allegations, nor [did] it state with particularity, the way in which any of those mailers are allegedly 'substantially similar' to Exhibit O." *Id.* at 63. The Court found that this "lack of particularity" was "alone sufficient to warrant summary judgment in favor of Defendants" and noted that Plaintiff had also failed to present any evidence that any Sinclair affiliate producing the other mailers ever had access to Exhibit O or a derivative thereof. *Id.* at 63.

8) Plaintiff claimed that Defendants' Exhibit J infringed on Plaintiff's Presentation, Exhibit H. While the Court recognized many similarities between the two presentations, it concluded that "none of the similarities generically pointed out by Plaintiff are copyrightable similarities." *Id.* at 69. The Court further found that copyright protection of Exhibit H was barred by the doctrine of merger, noting that permitting copyright protection for Exhibit H would "amount to a prohibition on virtually any television station explaining the process or method whereby advertisers can receive direct mail advertising when they purchase television advertising. Thus, copyright protection in this instance would equate to copyrighting an *idea* or a *concept,* since the expression of the idea or concept of combining direct mail and television advertising can only occur in a limited number of forms." *Id.* at 70–71.

9) The Court found that Plaintiff had "offered absolutely no evidence or argument in support of its contention that [Defendants'] Exhibit L infringes on Exhibit H." *Id.* at 71.

10) Plaintiff contended that Defendants' Exhibit L infringed on Plaintiff's copyrighted Exhibit M. The Court found that summary judgment was proper because Plaintiff had failed to offer the original or even a copy of Exhibit M, attaching only the Certificate of Registration to its Appendix and Second Amended Complaint. Plaintiff alternatively requested that the Court find that Exhibit L infringed on Plaintiff's Exhibit N, but Plaintiff offered no evidence that Exhibit N was registered with the Copyright Office. *Id.* 71–72. Moreover, Plaintiff identified only one similarity between the allegedly copyrighted work and the allegedly infringing work, and that difference would not have been copyrightable under the doctrine of merger. *Id.* at 72–73.

After reviewing the record before it on summary judgment and the findings of its July 1, 2008 Order, the Court concludes that Plaintiff's copyright claims were objectively unreasonable, and perhaps even frivolous, as to both their factual and legal bases. Plaintiff insists that its copyright claims were neither frivolous nor unreasonable because "the Court found similarities in the allegedly infringing mailers and Sun Media's copyrighted materials" and because "the Court also found similarities between the allegedly infringing presentations and Sun Media's copyrighted presentation." Pl.'s Resistance Br. at 8–9. Plaintiff argues, "[b]ecause of the number of similarities between Defendants' presentations and Sun Media's copyrighted materials, Sun Media acted reasonably, instead of frivolously, by asserting at least a colorable copyright claims with regard to mailers." Plaintiff cites *Pasillas v. Mc-Donald's Corp.* and *Donald Frederick Evans* in support of its position that the Court should deny Defendants' request for attorneys' fees on the basis that Plaintiff's claims were "colorable."

In *Pasillas*, the copyright holder of a "man in the moon" latex Halloween mask sued McDonald's Corp. for using a somewhat similar mask in a series of television commercials. 927 F.2d 440, 441 (9th Cir. 1991). The district court granted summary judgment in favor of McDonald's, concluding that the masks were not substantially similar.[10] *Id.* at 442. The district court found that while the masks contained four basic similarities, the similarities derived "from the common idea of a mask depicting the man in the moon" and that Pasillas could not "rely on these standard elements to satisfy the intrinsic test of substantial similarity of expression." *Id.* at 443. The appellate court affirmed the district court's decision. *Id.* McDonald's requested that the appellate court award sanctions, i.e., attorneys' fees and costs under § 505 and Federal Rule of Procedure 38 for a frivolous appeal, but the court declined to do so because it could not conclude that Pasillas' argument on appeal were "wholly meritless." *Id.* at 444. The court noted that McDonald's had presented no evidence that Pasillas' appeal was brought in bad faith and that the appeal could not be deemed frivolous because "[d]eterminations about substantial similarity are rarely obvious." *Id.*

In *Donald Frederick Evans,* the district court determined that the plaintiff had presented a prima facie case that the defendants had infringed its copyrights in five new home designs, but that the plaintiff had forfeited its right to copyright protection by the "publication, without

---

**10.** McDonald's had conceded both that Pasillas had a valid copyright in his mask and that McDonald's had access to Pasillas' mask. Thus, the only issue before either the district court or the court of appeals was whether the masks were substantially similar.

copyright notice affixed, of a large number of copies of the works." 785 F.2d at 903. The district court granted summary judgment in favor of the defendant but declined to award attorneys' fees under § 505. *Id.* at 900. Though it disagreed with some of the district court's underlying analysis, the appellate court affirmed the grant of summary judgment and the decision to deny fees. The appellate court stated that a prevailing defendant need not show that a plaintiff pursued a case in bad faith or that the claims are frivolous to receive an award of attorneys' fees under § 505. *Id.* at 916. The court also noted, however, "that a losing party's good faith and the complexity of the legal issues likely would justify a *denial* of fees to a prevailing party" and that such a result was "all the more appropriate in the instant case where the plaintiff asserted colorable copyright claims of the type which section 505 is intended in part to encourage." *Id.* at 916–17 (internal citations and quotations omitted).

The present case is distinguishable from both *Pasillas* and *Donald Frederick Evans.* First, in *Pasillas*, McDonald's had conceded both that Pasillas had a valid copyright in his mask and that McDonald's had access to it. Thus, the only issue before either the district court or the court of appeals was whether the masks were substantially similar. Here, however, Plaintiff wholly failed to provide evidence that either Exhibit M or N were protected by valid copyrights. Plaintiff further failed to demonstrate that Sinclair's affiliates had access to those materials on which Plaintiff did show the existence of a valid copyright. In *Donald Frederick Evans*, the plaintiff's claims were "colorable" because the plaintiff had presented a prima facie case of infringement and had demonstrated that the works in question were substantially similar. Ultimately, the copyright claim was decided on the hotly contested issue of waiver of copyright protection. Here, in contrast, Plaintiff failed to make out a prima facie case of infringement and utterly failed in even pointing out with any specificity *what* about Defendants' mailers and presentations was substantially similar, relying instead on vague assertions of infringement unsupported by record evidence. Even accepting as accurate Plaintiff's assertion that there were "similarities in Defendants' mailers and presentations and Plaintiff's copyrighted materials," those similarities were "minor" and related to aspects of the copyrighted works that were simply not copyrightable.

■ The Court further finds that Plaintiff's motivations in bringing the present action are, at a minimum, questionable. Defendants have presented evidence that Tandy, on behalf of Sun Media, repeatedly pressed for settlement, stating at one point that he was "in no hurry" and that when Defendants "become familiar with copyright case law [they would see] that the longer [they took to settle the case] the more the damages mount up." Defs.' Mot. Ex. 1. The Court does not believe that Plaintiff's attempts to settle the case, standing alone, are inherently a sign of bad faith. However, when viewing such comments in conjunction with the entire record of this case, particularly Tandy's deposition testimony where he repeatedly claimed a copyright interest in everything from sequencing and the inclusion of coupons in mailers to the placement of addresses labels on mailers and having prizes as copyrightable components, the balance certainly leans in the direction of bad faith. *See* Clerk's No. 84 at 54–56.

The Court next concludes that an award of attorneys' fees will advance considerations of compensation and deterrence. As one fellow district court has pointed out, the need to advance such considerations:

goes hand in hand with the inquiry into the reasonableness of the parties' positions. Consistent with furthering the purposes of the Copyright Act, a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses. Conversely, a party that presents only objectively unreasonable claims or defenses should not be encouraged in such conduct and, in fact, should pay the attorney's fees associated with the prevailing party's resulting necessary prosecution or defense.

*Luken v. Int'l Yacht Council, Ltd.,* No. 02–60772–cv, 2008 WL 4555124, at *16 (S.D.Fla. Sept.24, 2008). Here, Defendants had to spend a great deal of time and expense defending against Plaintiff's constantly evolving, but always overly generalized, claims of copyright infringement. As the Court discussed previously, the claims in general, and specifically as they were presented to this Court, were objectively unreasonable and Defendants should accordingly be permitted an award of attorneys' fees.

Finally, with regard to the question of whether an award of attorneys' fees in this case would deter the interests of the Copyright Act, the Court concludes it would not. Plaintiff generally asserts that copyright law "encourages plaintiffs to assert colorable copyright claims." Pl.'s Resistance Br. at 10. As discussed *supra,* however, Plaintiff's copyright claims in this case fall quite short of being "colorable." Moreover, while the Copyright Act is certainly designed to encourage "litigation of meritorious infringement claims," the Supreme Court has pointed that it is also "peculiarly important that the law's boundaries be demarcated as clearly as possible," meaning that a "defendant seeking to advance meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious infringement

claims." *Fogerty,* 510 U.S. at 517–18, 114 S.Ct. 1023. In the present case, Defendants presented thorough, articulate, and meritorious defenses to Plaintiff's sweeping and often incomprehensible claims of infringement. Defendants' efforts should be rewarded under the Copyright Act as they have aided in clearly demarcating the boundaries of the copyright laws.

### 2. *IUTSA*

 IUTSA provides that a court "may award actual and reasonable attorney fees to the prevailing party in an action under this chapter if . . . a claim of misappropriation is made in bad faith." Iowa Code § 550.6. Iowa courts have provided little guidance on what constitutes "bad faith" for purposes of the statute. In *Olson v. Nieman's, Ltd.,* however, the Iowa Supreme Court approved a district court's decision to deny attorneys' fees on the following basis:

> When litigation is involved and a claim for attorney fees is made, the Court will often seek to determine whether the litigation was frivolous, unduly prolonged and harassing in nature, or conversely was the result of sincere difference of opinion or interpretation of fact or law. As may be gleaned from previous sections of this opinion, this Court has found itself confronted with complex, novel and vexing issues of law and fact. This Court faults neither party for resorting to judicial resolution of their differences. Olson contends an award of attorney fees is necessary in order to "make Plaintiff whole." This Court is of the opinion that the jury verdict has amply served that purpose.

579 N.W.2d 299, 316 (Iowa 1998) (quoting the district court's order).

Defendants encourage the Court to adopt the test of "bad faith" employed by a fellow district court in *Norwood Operating*

*Co. v. Beacon Promotions, Inc.,* a case decided under the Minnesota Uniform Trade Secrets Act which, like IUTSA, permits an award of attorneys' fees if the claim of misappropriation is made in "bad faith." No. 04–1390, 2006 WL 3103154, at * 2 (D.Minn. Oct.31, 2006). Since Minnesota law also lacked any clear definition of "bad faith," the district court in *Norwood* adopted the two-part test employed by other courts:

> Other courts have created a two-part test to determine whether a finding of "bad faith" is proper. These courts reasoned that " 'bad faith' exists when the court finds (1) objective speciousness of the plaintiff's claim, and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets." *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts,* 222 F.Supp.2d 733, 744 (D.Md.2002) (quotations and citations omitted). "Objective speciousness exists where there is a complete lack of evidence supporting Plaintiff's claims." *Id.* (quotations and citations omitted). Subjective misconduct is judged by the relative degree of speciousness of plaintiff's trade secrets claim and its conduct during litigation. *Computer Econ., Inc. v. Gartner Group, Inc.,* No. 98–cv–0312, 1999 WL 33178020, at *6 (S.D.Cal. Dec.14, 1999) (unpublished).

*Id.* The district court in *Computer Econ., Inc.* provided a more detailed definition for "subjective misconduct," holding that "subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." 1999 WL 33178020, at *6 (noting that a court may find subjective misconduct by relying on direct evidence of the plaintiff's knowledge, but that a court may also infer subjective misconduct "from the speciousness of plaintiff's trade secret claim and its conduct during litigation"); *see also CRST Van Expedited v.*

*Werner Enter., Inc.,* 479 F.3d 1099, 1112 (9th Cir.2007) (affirming a district court order that employed the two-part test); *Degussa Admixtures, Inc. v. Burnett,* 471 F.Supp.2d 848, 857 (W.D.Mich.2007) (adopting the two-part test discussed above); *Berry v. Hawaii Exp. Serv., Inc.,* No. 03–00385, 2007 WL 689474, at *14 (D.Haw. Mar.2, 2007) (employing the two-part test). The Court finds the decisions referenced above convincing and will employ the two-part analysis in its determination of whether Plaintiff acted in "bad faith" with regard to its trade secrets claims.

Defendants contend that the Court's findings in its July 1, 2008 Order all weigh in favor of an award of attorneys' fees under the two-part test. Namely, Defendants contend that Plaintiff's misappropriation of trade secrets claims were objectively specious and that Plaintiff engaged in subjective misconduct in bringing and maintaining them. Plaintiff does not directly respond to either element of the two-part test, relying instead on a general argument that it did not bring its trade secrets claims in bad faith. Specifically, Plaintiff argues that various contracts between Plaintiff and Defendants contained a trade secret clause that encompassed "marketing, sales, promotional or production information, manuals, customer lists, artwork, methods of operation, [and other materials]." Pl.'s Resistance Br. at 6. Plaintiff argues that, by executing the contracts, Defendants agreed that Plaintiff had trade secrets and that, pursuant to the trade secrets clause, Plaintiff revealed trade secrets to Defendants which Defendants later misappropriated. *Id.* at 6–7.

Plaintiff's argument in this regard specifically ignores the Court's Order wherein it found that "Plaintiff cannot, however, use the confidentiality clause in the KDSM contract to turn items into trade secrets

that simply are not trade secrets under applicable law." Clerk's No. 84 at 26. The Court further rejected Plaintiff's argument that the trade secrets clause provided a legitimate basis for Plaintiff's claims in its July 1, 2008 Order:

> Given that Sun Media's claimed trade secrets are so amorphous as to be nearly incomprehensible, the Court must conclude that it would be inappropriate and, indeed, unjust, to find that the generic confidentiality clause employed by Sun Media was sufficient to put Defendants on notice that Sun Media claimed trade secret rights in everything from choosing door prizes to printing coupons. "[O]ne may not impose upon another, by a gratuitous and unilateral act a confidential relationship." *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 267 F.Supp. 726, 732 (S.D.Cal.1966) ("[A] confidence does not arise if the recipient has no notice of the confidential character of the disclosure.").

Clerk's No. 84 at 36–37. Moreover, the Court found countless other deficiencies in the legal sufficiency of Plaintiff's trade secrets claims: [11]

1) The Court recounted in detail the difficulty Defendants had in determining *what* trade secrets Plaintiff was asserting were misappropriated. *Id.* at 24. The Court concluded that Plaintiff had provided little more that "vague and unparticularized responses" on the issue *Id.* at 24.

2) The Court found that despite the "apparently extensive list of trade secrets that Tandy believes Defendants misappropriated," Plaintiff defended only one trade secret on summary judgment, namely "Sun Media's proprietary method for laying out mailers." *Id.* at 26.

3) With regard to its method for "laying out mailers," the Court found that "the factors Plaintiff claims to be proprietary are well-known throughout the advertising industry." *Id.* at 33. The Court further found that Plaintiff had failed to show that its trade secrets in this regard were "unknown to Defendants specifically or were not otherwise readily ascertainable." *Id.*

4) The Court determined that Plaintiff had failed to present sufficient evidence that its claimed trade secrets had economic value because Plaintiff had provided the Court with no evidence, save for "unsupported allegation[s]." *Id.* at 33–34.

5) The Court concluded that Plaintiff had failed to expend reasonable efforts to maintain the secrecy of its claimed trade secrets, because despite the trade secret clause Plaintiff relies on, Tandy never "told anyone at Sinclair or at KDSM, or at any other affiliate station ... that any particular information he was conveying to them was a trade secret in Sun Media's view." *Id.* at 36. The Court further found that the trade secrets clause was *not* incorporated into numerous agreements between the parties. *Id.* at 37–38.

6) The Court found that even if Plaintiff had proven all other elements of a trade secret claim, the claim would still fail because "Plaintiff has not presented anything other than sheer speculation to support its conclusion that Defendants actually used any trade secret belonging to Sun Media without authorization." *Id.* at 41.

After reviewing the record before it on summary judgment and the findings of its

---

**11.** As it did with the Plaintiff's copyright claims, the Court incorporates its July 1, 2008 Order by reference with respect to its findings regarding the trade secrets claims.

July 1, 2008 Order, the Court concludes that Plaintiff's trade secrets claims were pursued and maintained in bad faith under the two-part test employed by *Norwood.* Specifically, the Court finds that "there was a complete lack of evidence" on virtually every element of Plaintiff's trade secrets claim, meaning that the claim was objectively specious. The Court further finds that Plaintiff engaged in subjective misconduct in bringing and, more particularly, in maintaining the claim because, as indicated by the Court's findings highlighted above, Plaintiff clearly knew or should have known that its claim for trade secret misappropriation had no merit, giving the complete inadequacy of evidence supporting the claims. Accordingly, the Court finds that Defendants should receive an award of attorneys' fees under § 550.6.

### 3. *Amount of fee award.*

 Having determined that an attorneys' fee award is appropriate in favor of Defendants under both the Copyright Act and IUTSA, the Court must now determine what is an appropriate award. While IUTSA does not provide a methodology for determining the amount of a "reasonable" attorneys' fee, the Copyright Act has been interpreted as requiring the Court to employ the lodestar method.[12] *See Pinkham,* 84 F.3d at 294 ("We conclude that the copyright statute provides for 'reasonable' fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation; the actual fee arrangement between the client and the attorney is immaterial."); *Norwood,* 2006 WL 3103154, at * 3 ("The Eighth Circuit employs the lodestar method to determine what reasonable attorneys['] fees for a prevailing party in a Copyright Act case

should be."); *Litecubes, L.L.C. v. N. Light Prods., Inc.,* No. 4:04cv00485, 2006 WL 5700252, at * 12 (E.D.Mo. Aug.25, 2006) ("The fees awarded under the [copyright] statutes are for reasonable fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation." (internal quotations and citations omitted)); *Sirois v. Superior Pub. Co., Inc.,* No. 4:04cv3064, 2005 WL 1459388, at *2 (D.Neb. June 20, 2005) ("The case law requires that I use the 'lodestar' method to determine whether a fee should be awarded, and, if so, how much of a fee to award."). In 1974, the Fifth Circuit Court of Appeals set forth guidelines to be considered in determining an award of attorneys' fees. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). These guidelines are frequently used by courts in the Eighth Circuit in determining the adequacy of a lodestar calculation. *See Zoll v. E. Allamakee Cmty. Sch. Dist.,* 588 F.2d 246, 252 (8th Cir.1978); *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876, 884 (8th Cir.1977). Under *Johnson,* the district court should consider the following twelve factors when assessing attorneys' fees: 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Zoll,* 588 F.2d at 252 n. 11.

---

**12.** While IUTSA has not been interpreted as requiring that a lodestar calculation be used to determine the amount of any reasonable

attorneys' fee, the Court finds that using the lodestar calculation is appropriate in this case.

In this case, Defendants are requesting $355,348.00 in attorneys' fees, broken down as follows:

* 1395 hours for Michael J. Collins, at rates between $325 and $365 per hour, totaling $172,311.50;
* 876.6 hours for Matthew J. Gallagher, at rates between $160 and $190 per hour, totaling $154,110.00;
* 22.7 hours for Michael S. Libowitz, at rates between $340 and $375 per hour, totaling $8,365.50;
* .20 hours for Margaret L. Argent, at a rate of $280 per hour, totaling $56.00;
* .50 hours for Lisa A. Olivieri, at a rate of $215 per hour, totaling $107.50;
* .50 hours for Vasilios Peros, at a rate of $260 per hour, totaling $130.00;
* .50 hours for Steven A. Thomas, at a rate of $440 per hour, totaling $220.00; and
* 89.1 hours for local counsel J. Campbell Helton, at a rate of $225 per hour, totaling $20,047.50.

Defs.' Ex. 2. Defendants have provided the Court with its time logs detailing the hours incurred.

With regard to the time and labor required in this case, Plaintiff has not lodged any specific objections to the time claimed, but generally asserts that Defendants' time expenditures were excessive given that Mr. Collins and Mr. Gallagher both have previous experience with intellectual property cases. There is no question that the bulk of hours Defendants claim in this case were for work performed by Mr. Collins and Mr. Gallagher. The two together billed for 1371.4 hours, whereas all other attorneys that participated in the case billed for only a total of 113.5 hours. The Court finds this expenditure of hours abundantly reasonable, even considering

that both attorneys have significant prior experience. This case was originally filed on February 28, 2007. The original complaint was amended twice. Discovery was voluminous, as evidenced to some extent by the 1300 page appendix accompanying Defendants' motion for summary judgment and the 650 page appendix accompanying Plaintiff's resistance.[13] Indeed, Plaintiff continued adding claims of infringement throughout the discovery process and even after discovery had closed. No doubt numerous hours expended were necessary solely due to the constantly evolving nature of Plaintiff's claims and the lack of specificity regarding those claims.

 The Court finds next that the present case, though not particularly novel, was quite difficult and required a great deal of attorney skill to render proper legal representation. Plaintiff contends that Mr. Collins "admits that the issues involved in this litigation are not complex." Pl.'s Resistance Br. at 12. Apparently Plaintiff is referencing the following comment made by Mr. Collins while deposing Mr. Tandy:

Mr. Collins: I know you believe that, but do you have any evidence to that effect [that Defendants used Sun Media's trade secrets and manuals], sir?

Mr. Tandy: Not a one of these stations, Mr. Collins, knew how to do this project before I walked in the door. There is no way that they could suddenly get an epiphany and be able to do it after I walk out the door.

Mr. Collins: Well, it doesn't particularly strike me as rocket science, to be honest with you....

Pl.'s Resistance Br. Ex. A. Plaintiff's attempt to take Mr. Collins' comment out of

---

**13.** Indeed, the largest component of hours expended, 560.1 hours, was for matters of discovery. Defs.' Mot. Ex. 2.

the context in which it was made and characterize it as his personal opinion on the broad issues in this litigation is entirely improper. Moreover, regardless of what Mr. Collins did or did not think about the complexity of the present litigation or the viability of Plaintiff's claims,[14] he owed a duty to the Defendants to investigate and litigate all appropriate defenses to Plaintiff's claims. While Plaintiff's claims were ultimately found to be wholly without merit, Mr. Collins and his colleagues would have been remiss in their representation of Defendants if they did not defend this case as thoroughly and zealously as they did.[15]

With regard to whether Defendants' counsel was precluded from other employment due to their acceptance of this case, the Court finds they were. Mr. Collins and Mr. Gallagher, in particular, appropriately spent a great deal of time on this case, which necessarily impacted their ability to represent other clients. Moreover, the defense attorneys in this case were both capable and reputable, the amount of damages at issue were potentially in the millions of dollars, and the results obtained were, quite simply, the best possible—a complete grant of summary judgment in favor of Defendants.

With regard to hourly rates sought by Defendants' counsel, however, Plaintiff ar-gues that the rates charged are unreasonable, pointing out that "[r]ates are deemed reasonable when they are 'commensurate with the rates prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation.'" Pl.'s Resistance Br. at 11 (quoting *Yurman Designs, Inc. v. PAJ, Inc.,* 125 F.Supp.2d 54, 58 (S.D.N.Y.2000)). As noted above, Mr. Collins, the lead attorney on this case charged rates between $325 and $365 per hour, whereas Mr. Gallagher charged only $160 to $190 per hour. Local counsel, Mr. Helton, charged $225 per hour. The minimal hours expended by other attorneys that worked on the case were billed at rates of $215 per hour (Ms. Olivieri), $260 per hour (Mr. Peros), $280 per hour (Ms. Argent), $340-$375 per hour (Mr. Libowitz), and $440 per hour (Mr. Thomas). Plaintiff has not offered any indication of what it believes would be an appropriate hourly rate for defense counsel in this case, nor has it offered any evidence to the Court that any of the rates actually charged are unreasonable. Plaintiff's only argument is that Mr. Helton has reasonably comparable skills, experience, and reputation to Mr. Collins, but bills a much lower hourly fee.

While Plaintiff is generally correct that reasonable rates are, all other factors

---

**14.** Though certainly not dispositive, the daunting task of addressing Plaintiff's numerous claims is further evidenced by the fact that the Court's decision discussing and analyzing the case was 76 pages in length.

**15.** Plaintiff additionally argues that the Court should not permit Defendants to recover attorneys' fees for times spent on arguments that were ultimately unsuccessful, such as Defendants' argument that the parties had previously settled the issues in this litigation by virtue of certain Letter Agreements. *See* Clerk's No. 84 at 17–20. While the Court did not adopt the Defendants' position on this issue, the argument was neither frivolous nor unreasonable. Accordingly, the Court de-clines to reduce the attorneys' fee award. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

being equal, the prevailing market rates in a community, *see Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), a strict adherence to the standards of the community where the litigation occurred is "unduly parochial[,] particularly in this age of national and regional law firms working on larger more complex [ ] cases of more than local import." *In re Robertson Cos., Inc.,* 123 B.R. 616 (D.N.D.1990) (finding reasonable fees in bankruptcy case were those rates prevailing in the Minneapolis market, rather than in the North Dakota market). Indeed, in *Planned Parenthood, Sioux Falls Clinic v. Miller,* the Eighth Circuit Court of Appeals concluded that Chicago lawyers handling a South Dakota case were entitled to the prevailing Chicago rate, even though the appellate court had "no doubt that competent South Dakota lawyers could have handled th[e] case, and handled it well." 70 F.3d 517, 519 (8th Cir.1995).

▮▮▮ Defendants have proffered the affidavits of two local attorneys who practice in the area of intellectual property who charge, respectively, $300 and $350 per hour for similar litigation. The Court, through its own knowledge of prevailing community rates and the expertise required to perform this type of litigation believes that such rates are as common in the Des Moines area as in the Baltimore area and finds them reasonable. *See Gilbert v. City of Little Rock,* 867 F.2d 1063, 1066 (8th Cir.1989) ("The trial judge should weigh the hours claimed against his own knowledge, experience and expertise of the time required to complete similar activities."). Having carefully reviewed the record and the argument of the parties, the Court finds the following lodestar rates appropriate: $350 for Mr. Collins; [16] $175 for Mr. Gallagher; and $225 for Mr. Helton. Because the Court lacks information about the qualifications or precise contributions of the remaining attorneys who contributed relatively minimal time to the defense of this action, the Court determines a reasonable lodestar rate for all other attorneys is $175.00. Accordingly, the Court awards attorneys fees in the amount of $350,902.50.[17]

▮▮▮ As noted *supra,* certain items requested as costs are not allowable under § 1920, but may nonetheless be properly included in an attorneys' fee award. The Court will, therefore, add to the attorneys' fee award $1627.16 for federal express/UPS charges and $9,768.03 for travel expenses. *See Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir.2005) (concluding

---

**16.** The Court realizes that, by using a lodestar rate of $350 for Mr. Collins, the total attorneys' fee award in his favor exceeds the amount requested by $868.50. The Court believes, however, that the fee awarded is still entirely reasonable and appropriate on the particular facts of this case. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (noting that in "some cases of exceptional success an enhanced award may be justified" and stating that, in calculating a reasonable award, courts may compensate for "delays in payment" by using a current market rate rather than an historical one).

**17.**

| | |
|---|---|
| * Mr. Collins: | 494.8 hours X $350/hour = $173,180.00 |
| * Mr. Gallagher: | 876.6 hours X $175/hour = $153,405.00 |
| * Mr. Libowitz: | 22.7 hours X $175/hour = $3,972.50 |
| * Ms. Argent: | .20 hours X $175/hour = $35.00 |
| * Ms. Olivieri: | .50 hours X $175/hour = $87.50 |
| * Mr. Peros: | .50 hours X$175/hour = $87.50 |
| * Mr. Thomas: | .50 hours X $175/hour = $87.50 |
| * Mr. Helton: | 89.1 hours X $225/hour =$20,047.50 |

travel expenses that were not properly awardable as "costs" were nonetheless "properly part of a fee award as items reasonably charged by attorneys to their clients"); *Williams v. ConAgra Poultry Co.*, No. 03–2976, 2004 WL 2472274, at *2 (8th Cir.2004) ("We note that travel expenses for attorneys and many other out-of-pocket expenses ... are more properly characterized as part of an attorney's fee award, which may include expenses that a law firm normally would bill to its client."); *Antolik*, 407 F.Supp.2d at 1079 (awarding postage and shipping expenses as part of attorneys' fee); *Hite*, 361 F.Supp.2d at 955 (awarding postage fees and travel expenses as part of attorneys' fee); *Leftwich*, 702 F.2d at 695 ("[C]omputer-aided research, like any other form of legal research, is a component of attorneys' fees...."). The total attorneys' fee award is, therefore, $362,297.69.

## III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Attorneys' Fees and Costs (Clerk's No. 89) is GRANTED. The Clerk of Court shall tax costs against the Plaintiff in the amount of $22,229.36 and Plaintiff shall pay attorneys' fees to Defendants in the amount of $362,297.69.

IT IS SO ORDERED.